## BROWN v. SPILMAN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF WEST VIRGINIA.

No. 92. Submitted November 23, 1894. — Decided January 7, 1895.

A grant in a lease of forty acres of land, described by metes and bounds,
for the sole and only purpose of boring, mining, and excavating for
petroleum or carbon oil and gas, and piping of oil and gas over all the
tract excepting reserved therefrom ten acres, also described by metes
and bounds, upon which no well shall be drilled without the consent of
· the lessor, is a grant of all the gas and oil under the entire tract, condi-
tioned that the lessee shall not drill wells on the ten-acre plat without
the consent of the lessor.

JOHN F. TAYLOR, July 29, 1889, leased a tract of land con-
taining forty acres, in Grant township, Pleasants County, West
Virginia, to Joseph S. Brown for the purpose of boring and
mining for oil and gas, by a deed of that date, which was, on
August 3, 1889, duly recorded in the clerk's office of Pleasants
County. Brown took possession under this lease and pro-
ceeded to exercise the possession therein conferred.

On the 30th day of June, 1890, John F. Taylor and his wife,
by their deed of that date, sold and conveyed the same tract
of land to B. D. Spilman and W. N. Chancellor, subject to the
lease to Brown, which lease is described in the deed as being
a lease of thirty acres of said tract of land for oil and gas
purposes.

On the 9th day of July, 1890, Spilman and Chancellor filed,
in the Circuit Court of the United States for the District of
West Virginia, a bill of complaint against Joseph S. Brown,
wherein they set up their ownership of the said tract of land,
containing forty acres, conveyed to them by Taylor and wife,
and complain that Brown, without right, was asserting a claim
and title to the oil and gas in certain ten acres of said land, and
was threatening to interfere with the right and possession of
the plaintiffs in drilling oil wells and operating on said ten
acres of land; and they charged that the claim of Brown

created a cloud upon their title to the ten acres, and asked for an injunction and equitable relief. As exhibits, copies of the lease to Brown and of the deed to Spilman and Chancellor were annexed to the bill.

Brown, on July 18, 1890, filed an answer to the bill, asserting his right to possession of the entire tract of forty acres for oil and gas purposes, and denying that the complainants had, under their deed from Taylor, any right to bore for oil on the said ten acres, or to exclude him therefrom. On the same day he filed a cross-bill against Spilman and Chancellor, in which, after narrating the contents of the lease and of the deed, as he claimed them to be, he asked that Spilman and Chancellor should be enjoined from boring or mining for oil and gas on the said ten acres, and from interfering with his rights in the same.

To this cross-bill Spilman and Chancellor filed a general demurrer, and on August 25, 1890, by agreement of counsel, the case was set down for hearing upon the bill and exhibits and answer and replication to said answer to the original bill and upon the cross-bill and demurrer thereto.

On February 10, 1891, the court entered a final decree and filed an opinion, reported in 45 Fed. Rep. 291, sustaining the original bill, and enjoining Brown and all persons acting under him from entering into or upon said ten acres of land, and from instituting any action or suit against the plaintiffs in respect to the said ten acres, and from interfering with or interrupting the plaintiffs in their use of the ten acres for any purpose. By the decree the demurrer to the cross-bill was sustained, and the cross-bill dismissed with costs.

From this decree an appeal was taken to this court.

*Mr. Thomas I. Stealey* for appellant.

*Mr. John A. Hutchinson* for appellees.

The opinion of the Circuit Court presents the points relied upon by appellees so clearly and refers to the authorities in support of the points decided so fully, that it is unnecessary to elaborate the questions raised.

In support of the doctrine that the exceptions are reserved to the lessor under the lease the ten acres in controversy, appellees rely upon: Shep. Touchstone, 77; Plowden, 196, 561; Dyer, 59; Perkins, § 625; 3 Wash. Real Property, 5th ed., 461; *Stockbridge Iron Co.* v. *Hudson Iron Co.,* 107 Mass. 290, 321; *Corning* v. *Troy Iron &c. Nail Factory Co.,* 40 N. Y. 191, 209; *Low* v. *Settle,* 32 W. Va. 600; *Greenleaf* v. *Birth,* 6 Pet. 302; Taylor's Landlord & Tenant, §§ 156–157; *Maxwell Land Grant Co.* v. *Dawson,* 151 U. S. 586.

The brief of counsel for appellant admits substantially that the exception is as claimed by the appellees, but undertakes to avoid the effect of it by giving it a construction according to the opinion of the Supreme Court of Pennsylvania in the case of *Westmoreland &c. Gas Co.* v. *De Witt,* 130 Penn. St. 235. But in that case it was declared by the court to be a mere limitation on the right of the lessee to drill wells within three hundred yards of a certain building. Here was a definite and distinct grant of land excepted and reserved from a large tract by metes and bounds which the courts of West Virginia have held, as cited in *Low* v. *Settle,* 32 W. Va. 600, amounts to an exception which excluded the parcel described from the grant.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

Whatever rights Spilman and Chancellor have in the ten acres in controversy, they hold subject to the provisions of the prior lease to Brown, of which, as a recorded instrument, they took with notice, which is referred to as an existing lease, in the deed to them from Taylor, and which they attach as an exhibit to their bill.

In order to reach an intelligible construction of the lease it will be necessary to have before us its entire language, as follows:

"This lease made this — day of July, A.D. 1889, by and between John F. Taylor, of the county of Pleasants, and State of West Virginia, of the first part, and Joseph S. Brown, of Pittsburgh, Pa., of the second part, witnesseth:

"That the said party of the first part, in consideration of fifteen dollars in hand paid, the receipt whereof is hereby acknowledged, and the stipulations, rents, and covenants hereinafter contained, on the part of said party of the second part, to be paid, kept, and performed, hath granted, demised, and let unto the said party of the second part, his heirs, executors, administrators, or assigns, for the sole and only purpose of boring, mining, and excavating for petroleum or carbon oil and gas, and piping of oil and gas over all of that certain tract of land situate in Grant township, Pleasants County, and State of West Virginia, and bounded and described as follows, to wit: On the north by lands of Mrs. Jones and the Ohio River, south by lands of A. Smith, west by county road, east by Mrs. Jones, containing forty acres, more or less, excepting reserved therefrom ten acres, beginning at the railroad and running thence to the county road, thence south with said county road to A. Smith's line, thence with said Smith's line to a line to be drawn from the railroad to meet it, upon which no wells shall be drilled without the consent of the party of the first part. To have and to hold said premises peaceably and quietly, for the said purposes only, for, during, and until the full term of two years next ensuing the date and year above written, or so long thereafter as oil or gas shall continue to be found thereon in paying quantities. The said party of the second part hereby covenants, in consideration of the said grant and demise, to deliver unto the said party of the first part, his heirs and assigns, the full, equal one-eighth part of the petroleum or carbon oil discovered, excavated, mined, pumped, and raised on the premises herein leased, as produced in the crude state, to be delivered in pipe lines at the wells, and in case of a gas well being struck and utilized, then in lieu of a royalty, the party of the first part agrees to accept a yearly rental of two hundred dollars for each and every well drilled on above-described premises. All pipe lines shall be laid along the fences, or buried two feet under ground. The said party of the first part to fully use and enjoy the said premises for the purpose of tillage, except such parts as may be necessary for said mining purposes, and a right of

way to or from the place or places of said mining or excavating. The said party of the first part hereby grants to the party of the second part the right to remove any machinery, buildings, or fixtures, placed on said premises by the said party of the second part. The party of the second part further to have the privilege of using sufficient water from the premises herein leased for the prosecution of said business. The party of the second part agrees to, and will, within one month from this date, commence a test well for gas and oil in this vicinity, and complete the same within two months thereafter, unavoidable accidents and delays excepted. Said second party is to commence and drill a well on the within-described lands within nine months after the completion of said test well, and to prosecute said drilling with reasonable diligence, to its completion; he is also to pay to first party a monthly rental of ten dollars in advance, until said drilling one well is completed; the party of the second part is to keep up all fences, and to pay any damage done by leaving said fences down by said second party on his premises. A failure of the party of the second part to make said payments will render this lease null and void, not binding on either party. The party of the second part is only to have the right to assign this lease to the company of which he is a member and to no one else without the consent of the first party.

"In witness whereof the said parties have hereunto set their hands and seals the day and year first above written."

It may be well to make some preliminary observations on the subject-matter of this contract, and thus facilitate the task of its construction.

The subject of the grant was not the land, certainly not the surface. All of that except the portions actually necessary for operating purposes and the easement of ingress and egress, was expressly reserved to Taylor. The real subject of the grant was the gas and oil contained in or obtainable through the land, or rather the right to take possession of the gas and oil by mining and boring for the same.

Petroleum gas and oil are substances of a peculiar character, and decisions in ordinary cases of mining, for coal and other

minerals which have a fixed *situs*, cannot be applied to contracts concerning them without some qualifications. They belong to the owner of the land, and are part of it, so long as they are on it or in it, or subject to his control, but when they escape and go into other land, or come under another's control, the title of the former owner is gone. If an adjoining owner drills his own land and taps a deposit of oil or gas, extending under his neighbor's field, so that it comes into his well, it becomes his property. *Brown* v. *Vandergrift*, 80 Penn. St. 142, 147; *Westmoreland Nat. Gas Co.'s Appeal*, 25 Weekly Notes of Cases, (Penn.,) 103.

To operate the machinery used in boring an oil well it is necessary to erect a derrick, which is a structure of considerable height, and occupies a large space of ground. This derrick is also used, if oil be found, in connection with the pumping machinery. A very strong odor proceeds from a gas or oil well, and the noise of a well in operation can be heard for a long distance. These are some of the reasons why it is usual for farmers, when they grant the right to drill for oil and gas, to stipulate that wells shall not be drilled in close proximity to their dwelling-houses.

When oil or gas is found in paying quantities it is not usual to consume it or reduce it to use at the wells, but it is conducted in iron pipes to large tanks or reservoirs, whence it is distributed by other pipes to the places of consumption, often many miles distant.

These are matters within the common experience or knowledge of all men living in those portions of the country where oil and gas are produced, and courts will take notice of whatever ought to be generally known within the limits of their jurisdiction. 1 Greenl. Ev. § 6.

Taking up the contract in the present case, we find that the grant is expressly "for the sole and only purpose of boring, mining, and excavating for petroleum or carbon oil and gas, and piping of oil and gas over all of that certain tract of land situate in Grant township, Pleasants County, and State of West Virginia, and bounded and described as follows, [here follow the boundaries,] containing forty acres, more or less,

excepting reserved therefrom ten acres, beginning at the rail-road, [here follow boundaries,] upon which no wells shall be drilled without consent of the party of the first part."

Do these latter words import an exception of the ten acres, taking them wholly out of the grant, or a condition affecting the mode of enjoying the grant, and, as alleged in the cross-bill, "for the personal benefit, comfort, and enjoyment of the said Taylor?"

As the grant in terms was for the purpose of boring and mining for oil and gas, and piping of oil and gas over all of the forty-acre tract, it would be strange if an exception of ten acres was to be immediately added. If thirty acres only were to be included in the lease, and to be affected by its terms, the obvious course to pursue was to grant those thirty acres only. But if we read the grant as giving all the gas and oil under the entire tract of forty acres, and the subsequent clause as a provision that in exercising the rights granted Brown should not, without the consent of Taylor, drill wells on the ten-acre plat, we shall thus give effect to all the language used.

There is given an express right to run pipes for gas and oil over the entire tract, and also a right of way to and from the place or places of mining. The so-called exception does not seek to reserve anything out of the grant to bore or mine for oil and gas, nor to restrict the rights of way to thirty acres. Its only purport is to forbid the drilling of wells upon the ten acres. Whilst the lease, in some sense, may be said to cover the entire tract for gas and oil purposes, yet the operation of drilling wells, with its accompanying discomforts to those living on the tract, is restricted to the thirty acres.

Questions such as we are now considering have been determined by the Supreme Court of Pennsylvania in several cases.

In *Appeal of the Westmoreland and Cambria Natural Gas Company*, 25 Weekly Notes of Cases, 103, was a case where an oil lease, in terms almost like the one before us, was given by the owner of a farm to a gas company, "for the sole and only purpose of drilling and operating wells, and transporting and conveying petroleum oil or gas through, over, and from all

that certain tract of land situate, be," with an excepting clause as follows: "No wells to be drilled within three hundred yards of the brick or stone building;" and the landlord, or grantor, undertook to subsequently grant to third persons the right to bore oil on the excepted territory. This the court held he could not do, saying: "We have to consider whether the well threatened to be put down was upon the land leased to the plaintiff. Of this there cannot be the slightest doubt. The lease is of 'all that certain tract of land,' etc. This means the whole tract. The grant is limited as to use, 'for the sole and only purpose of drilling and operating wells,' but is not limited as to territory. Following the description of the tract is the clause on which respondents rely: 'No wells to be drilled within three hundred yards of the brick building belonging to J. H. Brown.' The well which the respondents propose to bore is within the prohibited distance, and they claim that Brown, (the landlord,) and they, as his lessees, have the right to drill wells within that part of the territory. But the clause in question is neither a reservation nor an exception as to the land, but a limitation as to the privilege granted. It does not in any way diminish the area of the land leased — that is still the whole tract — but it restricts the operation of the lessee in putting down wells to the portions outside of the prohibited distance. For right of way and other purposes of the lease, excepting the location of wells, the space inside the stipulated line is as much leased to the lessee as any other part of the tract. The terms of the grant would imply the reservation of the lessor of the possession of the soil for the purposes other than those granted to the lessee, and the parties have expressed, what otherwise would have been implied, by the provision that the lessor is 'to fully use and enjoy the said premises for the purpose of tillage, except such part as shall be necessary for said operating purposes.'

"From the nature of gas and gas operations, the grant of well right is necessarily exclusive. It was so held as to oil wells in *Funk* v. *Haldeman*, 53 Penn. St. 229, although in that case the plaintiff had a mere license to enter, etc., and not, as here, a lease of the land. And it is exclusive in the present case

over the whole tract. As already said, the clause relative to the three hundred yards distance was a restriction on the privilege granted, and not a reservation of any land or any boring rights to the lessor, and a well upon the prohibited portion was just as damaging to the lessees as upon any other portion of the tract. The drilling of the well threatened by respondents is therefore in violation of the lease, and should be enjoined." *Duffield* v. *Hue*, 26 Weekly Notes, 387, is to the same effect.

We observe in the cross-bill a distinct averment that Taylor, before he sold and conveyed to Spilman and Chancellor, had given his consent to Brown to drill wells on the ten-acre tract. If this were so, it would follow that Spilman and Chancellor must be regarded as having purchased subject to an exclusive right in Brown to bore for oil and gas over the entire forty-acre tract.

As, however, this averment does not seem to have received the attention of the court below, where the case went off wholly on the construction put upon the lease, we prefer to leave that feature of the case to be further dealt with in the court below, should the defendants desire to withdraw their demurrer and traverse the allegation of a license.

*The decree of the court below sustaining the original bill is reversed, and the decree sustaining the demurrer and dismissing the cross-bill is also reversed, and the cause remanded for further proceedings in accordance with this opinion.*