## SIMPSON v. PITTSBURGH PLATE GLASS COMPANY.

[No. 3,711. Filed February 7, 1902.]

MINES AND MINERALS.—*Natural Gas Lease.*—*Landlord and Tenant.*— A lease granting three certain described tracts of land each twenty feet square in a certain tract of 100 acres to lessees for natural gas and oil purposes provided that the lessees should furnish to lessor, during the continuance of the lease, natural gas, free of charge, necessary for domestic use for the dwelling house on the premises, and pay lessor $100 each year for each gas well drilled which should produce gas in paying quantities, and, until the drilling of a gas well, to pay an annual rental of $100. The lessor was by the terms of the lease prohibited from drilling or permitting others to drill wells on the 100 acre tract and from procuring a supply of gas for his domestic use. No gas wells were drilled on the leased premises, but pipes were maintained thereon for the transportation of natural gas produced elsewhere. *Held,* that lessee was bound during the continuance of the lease to furnish lessor natural gas for domestic purposes and pay $100 annual rental. *pp. 343-354.*

SAME.—*Natural Gas Lease.*—*Description of Leased Premises.*—A description in a natural gas lease of a tract of land twenty feet square "situated at the southeast corner of the north half of the southwest quarter" of a certain quarter section of land sufficiently describes the tract granted. *pp. 349-351.*

SAME.—*Natural Gas Lease.*—*Injunction.*—Where by the terms of a natural gas lease the lessee as a part consideration for the execution of the lease agreed to furnish gas to lessor for domestic use during the continuance of the lease, injunction will lie to restrain the lessee from cutting off the supply of gas. *p. 354.*

From Howard Circuit Court; *W. W. Mount,* Judge.

Action by Lawrence Simpson against the Pittsburgh Plate Glass Company for the recovery of rent on a natural gas and oil lease and to restrain defendant from cutting off plaintiff's supply of gas. From a judgment sustaining demurrer to complaint, plaintiff appeals. *Reversed.*

*B. C. Moon,* for appellant.

*M. Bell, W. C. Purdum, J. C. Blacklidge, C. C. Shirley* and *C. Wolf,* for appellee.

BLACK, J.—The appellee's demurrer to the appellant's complaint for want of sufficient facts was sustained. The

complaint, filed March 13, 1899, showed, in substance, that on the 1st of June, 1889, Amos T. Parker was the owner in fee and in possession of a described tract of land in Howard county, containing 100 acres, and then, his wife joining, executed to Levi Barrett and Sylvanus Barrett, a gas and oil lease thereon, which was by them accepted. The written agreement, so far as its provisions need be recited, was that the landowner and his wife, the Parkers, granted and leased to the Barretts, their heirs and assigns, three certain tracts, each twenty feet square, in a certain tract of 100 acres, for the purpose and with the exclusive right of a gas well on each of the three tracts, with the right of ingress and egress to and from each twenty-foot-square tract over the entire 100 acres, for the purpose of drilling, utilizing, and operating the gas wells, and piping and conducting gas therefrom, including the erection of sheds over the wells, and the right to erect and remove necessary machinery or fixtures, and the right to put down water wells and use sufficient water for such purpose. It was also stipulated that the Barretts, their heirs and assigns, should have the right to the use of the highways adjoining any part of the 100 acres, for the laying of mains and pipes for the transportation of gas. The Parkers also consented and agreed and bound themselves, their heirs, executors, and assigns, not to drill, or suffer or permit others to drill, or put down, any other gas well on any part of the entire 100 acres during the continuance of the lease; and it was stipulated that, if any gas well were drilled or put down on the premises during the continuance of the lease, the Barretts, their heirs and assigns, should thereafter be released from the payment of the rental provided for in the contract, but that otherwise the rights of the Barretts under the contract should not be affected. On the part of the Barretts, in consideration of the grant and lease and other conditions, it was agreed that they should deliver to the Parkers, during the continuance of the lease, natural gas, free of charge, necessary for do-

mestic use for the dwelling-house on the premises, or that might be erected thereon, not exceeding two; this gas to be delivered in a main or pipe on a public highway nearest the principal dwelling-house then on the premises, where it should be received by the Parkers, who were to make the necessary attachments. The Barretts agreed so to furnish gas on or before the 1st of November, 1889. The Barretts further agreed to give or pay the Parkers one-sixth part of all oil produced or found on the premises. They also agreed to pay, as an additional consideration, an annual rental of $100 each year for each gas well so drilled which should produce gas in paying quantities, sufficient for manufacturing purposes, which payments were to commence and become due and payable on the 1st of January, as to each gas well, after the completion thereof; and to continue thereafter annually during the continuance of the lease. It was agreed that until the drilling of a gas well on the premises by the Barretts, they should pay the Parkers an annual rental of $100, to be paid on the 1st of January each year, and that there should be a well drilled by the 1st of November, 1889, or paid for, whether drilled or not. It was provided that the grant and lease should be deemed to commence at and run from the date of the signing thereof, June 1, 1889, and should be deemed to have terminated whenever natural gas ceased to be used generally for manufacturing purposes in Howard county, Indiana, or whenever the Barretts, their heirs or assigns, should fail to pay or tender the rental price agreed upon within sixty days of the date of its becoming due. It was stipulated that the contract should extend to, and be binding upon, the heirs, executors, and assigns of the parties. The description in the contract of the 100 acres of land was as follows: "North half of the northwest quarter of section twenty-two, town twenty-three north, of range five east; also north half of the southwest quarter of the northwest quarter of section twenty-two, town twenty-three north, of range five east."

The locations of the three twenty-feet-square tracts were stated as follows: "One of said twenty-foot-tracts being situated fifteen feet south of the northeast corner of the northwest quarter of section twenty-two, town twenty-three north, of range five east; the second of said twenty-foot-tracts being situated at the southeast corner of the north half of the southwest quarter of the northwest quarter of section twenty-two, town twenty-three north, of range five east; the third of said twenty-foot-tracts being situated at twenty feet east and fifteen feet south of the northwest corner of section twenty-two, town twenty-three north, of range five east." It is further alleged in the complaint, that on the 16th of July, 1889, the Barretts assigned the lease, by indorsement in writing, to the Diamond Plate Glass Company, a corporation organized under the laws of this State, by which the assignment was then accepted; that on the 13th of October, 1890, that corporation assigned the lease, by indorsement in writing, to the Diamond Plate Glass Company, a corporation organized under the laws of the state of Illinois, which then accepted the assignment; that on the 1st of April, 1895, the last named company assigned the lease in writing to the appellee, and the appellee then accepted the assignment, and has held the lease ever since that date and still holds it; that the appellee, in consideration of this assignment, agreed to perform all the terms and conditions of the lease, and to pay all the rentals thereafter maturing under the lease; that the assignors of the appellee entered upon said land, under the lease, and laid in the highway thereof pipes and mains for the transportation of gas, and maintained the same from November 1, 1889, to April 1, 1895; that when the appellee became the owner of the lease, on April 1, 1895, it entered on the land under the lease, for the purpose of maintaining thereon, in the highways thereof, said pipes for the transportation of natural gas, and the appellee has had and maintained on and across the land, in the highways thereof, from the

1st of April, 1895, to and at the commencement of this action, under the lease, 120 rods of one-inch natural gas pipe, which the appellee has continuously used, and still uses, for the transportation of natural gas produced elsewhere; that from the 1st of April, 1895, until the 15th of October, 1898, the appellee had and maintained on and across the land, in the highways thereof, under the lease, 120 rods of six-inch gas pipe, which it used all that time for the transportation of natural gas produced elsewhere; that at the date of the execution of the lease there was, and continuously since then there has been, and now is, a highway forty feet wide along the west side of the 100 acres of land, one-half of the width of which is on said land, now owned by the appellant, and all that time there has been, and now is, a highway thirty feet wide along the north side of said land, one-half of the width of which is on said land; that no gas or oil well has been at any time drilled or put down upon the 100 acres of land; that the rental maturing under the terms of the lease on January 1, 1890, 1891, 1892, 1893, 1894, 1895, 1896, 1897, and 1898, has been duly paid, but the rental of $100 due January 1, 1899, is still due the appellant and wholly unpaid; that Amos T. Parker continued to own the 100 acres of land from the date of the execution of the lease until March 10, 1890, when, his wife joining, he conveyed the land to Walter F. Templin, who continued to own it until February 27, 1897, when, his wife joining, he conveyed it to the appellant, who ever since has been, and now is, the owner thereof; that natural gas has been at all times since the execution of the lease, and still is, used generally for manufacturing purposes in Howard county, Indiana; that Amos T. Parker, Walter F. Templin and the appellant have at all times duly performed all the conditions of said contract on their part; that the assignors of the appellee duly furnished to the appellant's grantors natural gas, free of charge, necessary for domestic use at the dwelling-house on said premises, from November

1, 1889, to April 1, 1895, since which date the appellee has furnished to the appellant's immediate grantor and to the appellant natural gas, free of charge, necessary for domestic use at said dwelling-house, and the appellee is now so furnishing the gas to the appellant at said house; that the appellee asserts that it has a right to remove the pipes for the transportation of the gas from the appellant's said land, and to cease to furnish him natural gas necessary for domestic use at the house on said land, and, unless restrained by the court, it will in the immediate future so remove the pipes and cut off the supply of natural gas at the appellant's house, which supply is necessary for domestic use at said house; that, if it shall so cut off the supply, it will greatly damage the appellant; that natural gas has a great and peculiar value as fuel and for light for domestic use, there being no known substitute therefor; that the appellant will be wholly unable to obtain from any other source a supply of natural gas necessary for domestic use in said dwelling-house, if the appellee shall cut off the supply, and he will be compelled to use wood for fuel and coal-oil for lights; that said house is fitted up with the necessary pipes and fixtures for using natural gas, which will be rendered worthless by the cutting off of the supply of natural gas by the appellee; that the appellee has an ample and abundant supply of natural gas, and can readily maintain said gas pipe lines in the highways and furnish natural gas to the appellant necessary for domestic use at said house, in compliance with the terms of said contract. Prayer for judgment for $100, with interest and costs, and that the appellee be enjoined, etc.

Some portion of the argument before us has been devoted to the subject of the uncertainty of the period designated in the agreement for its duration, or the indefiniteness of the time indicated for the termination of the lease. There having been no actual occupancy, pursuant to the agreement, of any of the twenty-feet-square tracts for the

purpose of a gas well thereon, it is properly contended for the appellee that it can not be said that there was as to them, or any of them, a tenancy from year to year, which is a general tenancy, in which the premises are occupied by the consent, either express or constructive, of the landlord, and which is determinable at the end of the current year by notice to quit. But it is not necessary that we decide in this cause the dispute as to whether or not the agreement was a good present lease for years of the three small tracts, of which possession was not taken, or a good lease in perpetuity, or a sufficient grant in fee, subject to the contingency mentioned therein.

In this action it is not sought to recover rent for the three small tracts, and the question is not before us as to whether or not the appellee might be held liable for rent of those tracts or either of them, without entry and occupancy under the contract; nor are we required to decide as to any liability under an implied obligation to develop the field by drilling wells upon the small tracts, nor yet as to what would have been the nature and extent of the obligations of the appellee, if it were in possession of one or all of those tracts pursuant to the agreement. It was expressly agreed that a well should be drilled by the 1st of November, 1889, or paid for whether drilled or not. If drilled and producing gas in paying quantities, sufficient for manufacturing purposes, it was to be paid for by the annual rent; but it was not drilled, and it was stipulated that until the drilling of a gas well on the premises,—that is, on one of the three small tracts,—the second party should pay to the first party $100 a year, called "rent," on the 1st of January of each year. The action was brought upon the express undertaking to drill a well upon one of the small tracts, and to recover the amount stipulated for such failure.

It is contended on behalf of the appellee, that the descriptions of all the twenty-feet-square tracts are insufficient, that all the descriptions of the tracts are so indefinite and

uncertain as to render the agreement void; that the contract grants no certain rights to the appellee'; and that the lessee could not point out with any certainty the real estate which he had leased. Upon reflection we have concluded that, taking the language of the instrument according to the common understanding, each of the twenty-feet-square tracts, though meagerly described, might be located readily by a competent surveyor; the first as being in the angle formed by the south line of the east and west road and the east line of the northwest quarter of the section; the second as being in the angle formed by the east and south lines of the north half of the southwest quarter of the northwest quarter of the section; and the third as being in the angle formed by the east line of the north and south road and the south line of the east and west road. Therefore, we think there is no want of sufficient description of any of the real estate mentioned in the contract, and the appellee can not be excused from liability for failure to drill a well, on the ground of inability to determine where to drill it. As to the sufficiency of the description of the small parcel mentioned second of the three tracts, there can be no room for argument.

The first of the three small tracts is the one most meagerly described. It is all to lie within the northwest quarter of the section whose boundary lines, we know, run north and south and east and west. The whole twenty-feet-square tract is spoken of as lying fifteen feet south of the northeast corner of that quarter section. Going directly south from that point, we must come to some point of the small tract. As the small tract must all lie west of the north and south line forming the east line of the quarter section, the point reached by going directly south from the northeast corner of the quarter section must be the angle of the small tract. Unless a portion of the small tract lies in the road which runs east and west, one of the boundary lines of the small tract must extend directly south along the east line of the

quarter section, and another directly west along the south side of the road; and the existence and situation of that highway being alleged, we should presume that it was the intention of the parties to locate the small tract entirely south of the road and west of the east line of the quarter section, the angle of the small tract being exactly fifteen feet directly south of the northeast corner of the quarter section.

As to the small tract last mentioned of the three, construing the language of the lease according to its ordinary meaning, and giving it the effect manifestly intended by the parties, some point of the small tract must be found by going twenty feet directly east from the northwest corner of the section and then fifteen feet directly southward. The point thus reached is the angle formed by the east line of the north and south road and the south line of the east and west road. We should presume here, also, that it was not the purpose to lease a part of either of the public highways described in the complaint, and that the point so reached by going twenty feet east of the northwest corner of the section and then fifteen feet south is one of the angles of the small tract, and that the boundary lines extending from the angle run directly east and south from that point.

If it be true that the description of the first or third mentioned small tract, taken literally, is consistent with an intention to describe a tract the position of one of whose angles is definitely fixed but whose area might extend into the public highway, yet as the use prescribed would be an unlawful use of the public highway, and the description in each instance is capable of a construction consistent with a lawful intent of both parties to the agreement, such construction ought to be given to the language by the court. As to the question whether or not the first and third descriptions under consideration would be sufficient for the purpose of this action without aid from the averments regarding the

highways, it is not the purpose in this opinion to determine, such matter not being necessarily involved in this case.

The nature and habits, or characteristics, of natural gas have been much discussed in the decisions, and we need not go at length into such matters. Courts will take notice of whatever ought to be generally known within the limits of their jurisdiction. *Brown* v. *Spilman,* 155 U. S. 665, 15 Sup. Ct. 245, 39 L. Ed. 304. It is established that if a landowner or lessee drill his land and tap a deposit of oil or gas extending under his neighbor's field, so that it comes into the well so drilled, it becomes the property of the one who thus obtains possession of it. *Brown* v. *Spilman,* 155 U. S. 665; *People's Gas Co.* v. *Tyner,* 131 Ind. 277, 16 L. R. A. 443, 31 Am. St. 433.

A person or company purposing to obtain natural gas in large quantity for sale or for manufacturing purposes, finds it desirable to acquire exclusive right to search for the fugitive mineral in a large contiguous area or areas; and though it be not necessary for the proper development of a particular area to drill wells upon the land of all the several proprietors within the district, it is desirable and profitable to have no competing wells on the territory near to the wells deemed sufficient for the development of the territory. This accounts for and leads to the insertion in contracts made between such prospectors and the landowners of provisions for exclusive rights, and stipulations forbidding the landowners from drilling wells upon their own land or permitting others to do so; also, along with a provision for an exclusive right, it is common to insert a stipulation for the privilege of delay in drilling wells, upon a specified consideration. Such provisions constitute valuable considerations in these contracts.

In the case before us, the landowner, by the terms of the contract, was restrained, during the continuance of the binding effect of the agreement, from drilling or permitting others to drill on the 100 acres, and so from procuring on

his own land a supply of gas for his domestic use, and such restraint was inserted for the benefit of the lessee.

If it be correct to say that upon taking possession of one or all of the three tracts, and drilling a well or wells thereon, the lessee would have become a tenant from year to year, merely, such construction would not relieve the lessee from the express obligation to drill one well.

Among the provisions of the agreement, constituting a material element of the whole transaction, was one requiring the lessee to bring natural gas to a point on the highway nearest the principal dwelling-house and permitting the lessee to tap it and to take therefrom gas for domestic use. The consideration for this privilege is to be found not merely in the grant of a right to lay pipes in the highway, which was actually exercised, but in all the valuable concessions from the lessor to the lessee, including the agreement to permit no other wells upon the 100 acres; so that if it be found by the appellee to be more profitable to cease to exercise the right so to use the appellant's land in the highways and to remove the mains and pipes therefrom, this can not be regarded as a sufficient excuse for refusing to continue to supply gas for domestic use, according to the contract, it appearing from the complaint, not merely that natural gas is still used generally for manufacturing purposes in Howard county, but that the appellee has an ample and abundant quantity of gas with which to supply this great need of the appellant, which it appears can not be otherwise supplied by him without violating his contract and going to great expense. This obligation to supply gas for domestic use, by the terms of the agreement, is to continue during the continuance of the lease, that is, while the parties continue bound to each other under the agreement. It is not dependent upon the question as to what would be the duration of the right to recover rents for wells actually drilled upon the three small tracts of land. As long as the appellant is bound not to drill or to permit others to drill

upon the 100 acres, and the appellee is bound by the stipulation for the drilling of a well on one of the three small tracts, the appellee will be bound to supply gas for domestic purposes. It appears from the complaint that the appellee is still abundantly able to perform this obligation to supply gas for domestic use. We know judicially that it can not be determined with certainty how long any gas-producing territory in this State will continue to supply natural gas in abundance or in sufficient quantity for profitable or convenient use for either manufacturing or domestic purposes.

The obligation to supply gas to the appellant for domestic use is not one which the appellee owes by law to the appellant as one of its duties toward the public by reason of the enjoyment of corporate franchise, or because of the public nature of the business in which it is engaged, of which the performance of the obligation to the appellant constitutes a part. The obligation is based upon the contract or lease, and the situation of the parties assumed pursuant thereto.

The application for an injunction can not be said to be an appeal to equity for the enforcing of performance of a corporate duty of such, or of a duty of public nature, yet the appellant, upon the facts stated in the complaint, will suffer great injury by the cutting off of the supply of gas for domestic use, and he has not a remedy by a single action at law, plain and adequate, and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. This is sufficient to entitle him to an injunction. *Xenia, etc., Co.* v. *Macy*, 147 Ind. 568.

We think the complaint stated a cause of action for the amount stipulated for continued failure to drill a gas well, and showed sufficient ground for restraining the appellee from cutting off the gas for domestic use.

Judgment reversed.

Comstock, C. J., concurs.

Robinson, P. J., and Henley and Wiley, JJ., concur in the conclusion reached but not in the reasons given, believ-

ing that the first and third descriptions of the tracts twenty feet square are bad.

Roby, J., concurring. In *Diamond Plate Glass Co.* v. *Tennell*, 22 Ind. App. 132, there was no extrinsic fact from which the intention of the parties to locate the square tract, with its lines parallel to those of the section or of its subdivision, could be gathered.

It appears that the tract described as being twenty feet east and fifteen feet south of the given corner in this case will, when so located, be in the angle formed by the sides of the two highways; and, by reference to that fact, I think the same rule will apply as though it were located in the corner of the section, and therefore concur in the opinion of Black, J., and regard it as not inconsistent with the Tennell case. In any event, there being one good description in the lease, the demurrer to the complaint should be overruled.