## CENTRAL FUEL COMPANY v. WALLACE.

[No. 21,716.   Filed November 29, 1910.]

CONTRACTS.—*Assignment.*— *Gas and Oil.*—*Conveyance of Part of Land.*—*Injunction.*—*Damages.*—Where the owners of 200 acres of land leased the right to sink two gas and oil wells on such land in consideration of free gas for certain fires and lights, and such owners conveyed 80 acres of such tract, assigning therewith the lease and profits therefrom, such grantee and assignee may enjoin such lessee from sinking more than two wells, may compel such lessee to deliver to him the gas contracted for in the lease, and a second lease from such owners of the right to sink wells on the remaining 120 acres is void as to such assignee of the former lease, and such assignee's oral agreement to accept the gas at another residence does not affect his rights under the contract.

From Hancock Circuit Court; *M. E. Forkner,* Special Judge.

Suit by John C. Wallace against the Central Fuel Company. From a decree for plaintiff, defendant appeals. Transferred from Appellate Court under §1399 Burns 1908, Acts 1901 p. 565, §15.   *Affirmed.*

*Cook & Cook* and *Smith, Cambern & Smith,* for appellant.

*Jackson & Sample* and *Douglas Morris,* for appellee.

MONTGOMERY, J.—Appellee brought this suit to recover damages for the breach of a contract to furnish natural gas, and to enjoin appellant from drilling gas wells on his (appellee's) land.   The court made a special finding of facts, upon which conclusions of law were stated, and it is charged on appeal that the court erred in its conclusions of law. The special finding was, in substance, as follows:   That on August 26, 1902, Josiah C. Alger and wife owned in fee simple a tract of land, particularly described, containing 200 acres, and on that day they leased said land to appellant by a written instrument, made a part of the finding, by the terms of which appellant was granted the exclusive

Vol. 174—46

right to drill gas and oil wells on said premises for a term of ten years, and to lay pipes for the purpose of marketing the product, but not more than two wells might be drilled; that in consideration of the grant said Algers were to receive, from the nearest pipe-line, gas for three fires and seven lights, to be used in the dwelling-house situated on said premises, or at the Alger residence in the city of Rushville (this lease was duly recorded October 17, 1902, in the office of the recorder of Rush county, Indiana, in which county the lands are situated); that on February 10, 1903, the Algers, by warranty deed, conveyed to appellee 80 acres of the 200-acre tract, and in said deed, as part of the consideration thereof, agreed to assign to appellee the gas and oil lease before mentioned affecting said lands, with all the rights and privileges thereunto belonging; that said deed was duly recorded in the office of the recorder of Rush county on February 12, 1903, since which time appellee has been in possession of the lands therein described; that the Algers refused to assign said lease to appellee, and in October, 1903, he filed suit in the Rush Circuit Court against the Algers, alleging that they had wholly failed to assign said lease to him in accordance with their agreement in said deed, and prayed for a specific performance of said agreement; that the cause was put at issue and tried by said court at its November term, 1903, and said court therein adjudged and decreed that appellee was the owner in fee of all rights and privileges in said lease contained, which had been owned by the Algers at the time of the execution of said deed, and appointed a commissioner to execute a proper assignment of such lease to appellee; that in pursuance of the order of the court the commissioner named did, on December 21, 1903, execute on the margin of the record of said lease an assignment thereof to appellee; that the officers and agents of appellant knew of said decree and of the assignment of said lease at the dates on which they were entered and assigned; that

in October, 1903, appellee owned and resided upon a tract of ground adjoining the eighty-acre piece before mentioned, and while said suit was pending it was orally agreed between appellant and appellee that the house in which he resided should be piped for the use of natural gas and connected with the pipe-line running along the adjoining highway, through which appellant was and is delivering natural gas to its patrons and from which appellee should take gas for three fires for heating and cooking purposes and for seven lights, and during the pendency of said suit should pay therefor at the rate of fifteen cents a thousand cubic feet, and if it should be decreed that he was entitled to an assignment of said lease from the Algers, gas for said fires and lights should thereafter be furnished free to appellee at his residence in the city instead of at the residence on the lands conveyed by Algers to appellee; that in pursuance of said agreement appellee piped his house for gas at an expense of $125, and appellant connected said house with its pipeline, and furnished appellee gas for said fires and lights until October 28, 1905; that appellee paid appellant for gas at the rate of fifteen cents a thousand cubic feet until December 21, 1903, and thereafter such gas was furnished to him free; that on June 1, 1904, the Algers executed to appellant another lease on that part of the land not conveyed to appellee, by the terms of which appellant was authorized to sink on said lands three gas wells, and thereafter, in the fall of 1904, pursuant to said second lease, did drill three gas wells on said land and connected them with the mains by which gas was supplied to its customers; that no well had been drilled on appellee's eighty-acre tract or on the residue of the Alger lands prior to the execution of said second lease; that on October 26, 1905, appellant notified appellee that it intended to drill two gas wells on his eighty-acre tract, and at the same time expressed its willingness to continue furnishing gas to his residence for three fires and seven lights free of charge, provided it was

permitted to drill the two wells on his land, but appellee refused and still refuses to permit appellant to enter upon the land for said purpose; that on October 28, 1905, appellant shut off the connection between its pipe-lines and appellee's residence, and ever since has refused to deliver any gas to said residence; that appellant is a corporation engaged in the business of mining, distributing and selling natural gas in Rush county, and has a pipe-line running along the highway near appellee's residence, and no other person or corporation is engaged in distributing natural gas for sale to customers within one and one-half miles of appellee's said residence; that the value of natural gas for three fires and seven lights, delivered at appellee's residence, is $55 a year; that the rock pressure of gas in said field has decreased, and is gradually decreasing, and natural gas is of a fugitive nature. The court found from the foregoing facts that the law is with appellee and that he was entitled to the sum of $120.68 as damages.

The contention of appellant is that the conveyance of a part of the leased land to appellee and the transfer of the lease to him released the residue of the Alger tract from the obligations of the lease. This insistence seems to us manifestly untenable. The Algers granted to appellant the exclusive right to the gas and oil under a body of land containing 200 acres, with the privilege of removing, by means of two wells, said gas and oil within a period of ten years. This instrument or lease was duly acknowledged, executed and recorded. The subsequent sale of eighty acres of the tract was necessarily made subject to the provisions of the outstanding lease. The gas for fires and lights, stipulated for in the lease, was to be furnished either for the house on the leased lands or for the Alger residence in the city of Rushville, but not for both. In the conveyance of the eighty acres to appellee it was agreed that he should have all the rights, privileges and benefits of the lease which rested upon the entire Alger farm. It was agreed in the

deed that the lease should be, and in pursuance of a judicial decree it was, assigned to appellee. These transfers did not purport to change the terms of the lease, or to release the 120 acres still owned by the Algers from its binding force, and manifestly did not and could not affect, to any extent, the property rights granted to appellant by the lease. Appellant still owned the gas and oil under the entire tract, and the right to remove said gas and oil within the leased term by means of two wells, to be located at such places as it deemed best for that purpose. The Algers, during the period covered by the lease, had no reserved gas or oil rights in the land. Appellee, by his purchase, became the owner of the dwelling-house on the Alger farm, and by the assignment of the lease became entitled to have it supplied by appellant with gas for three fires and seven lights. By an amicable arrangement between appellant and appellee the stipulated quantity of gas was furnished for a house in the vicinity, then occupied by appellee, instead of the residence on the leased premises. This arrangement in nowise affected the rights granted to appellant under the lease, and as the wells had not yet been located, it might have drilled both of them on appellee's 80 acres, or on the Algers' 120 acres, or one on each tract, at its pleasure. The location of the wells could not discharge any part of the leased lands from the obligations of the lease. It follows that when the second lease was executed the Algers had no gas or oil rights to convey, and such lease was ineffectual as against the provisions of the outstanding lease, and appellee's rights therein. If the Algers could then have made a valid gas and oil grant to appellant, they could, by the same right, have conveyed to a stranger, and thereby have drained the gas reservoir under said lands, to the damage of appellant, and force it, willingly or unwillingly, to locate its two wells upon appellee's land. It is clear that such a second lease could not be made to the damage of appellant, and it is equally clear that such a grant to appellant,

to the prejudice of appellee's rights, cannot be sustained. When appellant, although assuming to act under the second lease, sunk two wells upon the Alger land, its drilling rights under the lease affecting appellee's tract was exhausted, and it was bound to render the compensation promised by the lease, as modified by subsequent agreement. It follows that appellee was entitled to recover damages for the breach of contract, and to an injunction restraining the threatened acts of appellant in violation of his property rights. *Brown* v. *Spilman* (1895), 155 U. S. 665, 15 Sup. Ct. 245, 39 L. Ed. 304; *Westmoreland, etc., Gas Co.* v. *DeWitt* (1889), 130 Pa. St. 235, 18 Atl. 724, 5 L. R. A. 731; *Indianapolis Nat. Gas Co.* v. *Kibbey* (1893), 135 Ind. 357; *In re Allison's Appeal* (1874), 77 Pa. St. 221; *Funk* v. *Haldeman* (1866), 53 Pa. St. 229. The conclusions of law stated are in accord with the facts found, and are not erroneous.

The judgment is affirmed.