### GREESON et al. v. IMPERIAL IRR. DIST. et al.

### No. 6751.

Circuit Court of Appeals, Ninth Circuit.

June 6, 1932.

E. R. Simon, of Los Angeles, Cal., for appellants.

Chas. L. Childers and D. B. Roberts, both of El Centro, Cal., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

This appeal is to reverse an interlocutory order denying an injunction pendente lite and from an order dismissing the bill of complaint.

The bill was brought by appellants, the jurisdictional amount and diversity of citizenship appearing, to enjoin appellees from entering into a certain proposed contract, referred to herein as "the proposed allocation contract," between appellee district and the Palo Verde Irrigation District, Coachella Valley County Water District, Metropolitan Water District of Southern California, city of Los Angeles, city of San Diego, and county of San Diego, purporting to apportion as between the said parties all of the waters of the Colorado river to which the state of California may be entitled under the provisions of the Colorado River Compact, the Boulder Canyon Project Act (43 USCA §§ 617–617t), and other applicable legislation.

The bill of complaint alleges in substance that appellee district is organized under the laws of the state of California (Stats. of 1897, p. 254), commonly known as the California Irrigation District Act; that it includes within its boundaries 605,000 acres situate within Imperial county, Cal.; that for many years last past it has taken and is the owner of the right to take 3,423,511 acre feet per annum of the waters naturally flowing in the Colorado river, and that an average of 20 per cent. thereof has been sold and delivered for the irrigation of land in Mexico, and the remainder, 2,738,809 acre feet per annum, has been utilized for the irrigation of approximately 425,000 acres of irrigable lands within the said district; that said lands in their natural state are desert and arid; that the water rights and priorities constitute a part of the real properties belonging to said district; that the operation and effect of said allocation contract is and will be to relinquish to each of the other parties to said contract vested water rights and priorities to water rights in the waters of the Colorado river, and also relinquish certain water rights and priorities to "other lands under or that will be served from the All American Canal in Imperial and Coachella Valleys," and the vesting of water rights and priorities to water in the said "other lands" equal to the water rights retained by the Imperial Irrigation District under said allocation; that it is not within the power of its board of directors to relinquish its water rights and priorities without any consideration therefor; that the relinquishment of its water rights and priorities is without consideration; that said contract is ultra vires; that the board of directors of said district threaten and unless enjoined will immediately make and enter into said proposed contract; that plaintiffs have no plain, speedy, and adequate remedy at law; and that this suit is brought by plaintiffs on their own behalf and on behalf of all landowners of said district who may become parties hereto. No other parties have joined as parties to the litigation.

There is no charge of fraud. The burden of plaintiffs' charge is that appellee is about to officially do an ultra vires act, in that it would relinquish without consideration rights and property of which plaintiffs are part owners as members of the district. The motion to dismiss admits as true all facts well pleaded. This was conceded by the trial court, but rightfully the trial court considered pertinent facts which it judicially knew, and on such consideration dismissed the bill of complaint. When a pleader states matter as fact which is out of harmony with facts which the court judicially knows, the averments in the pleading are disregarded. Jones v. United States, 137 U. S. 202, 11 S. Ct. 80, 34 L. Ed. 691; Pearcy v. Stranahan, 205 U. S. 257, 27 S. Ct. 545, 51 L. Ed. 793; Middlesex Transportation Co. v. Pennsylvania R. Co., 82 N. J. Eq. 550, 89 A. 45; Heiskell v. Knox County, 132 Tenn. 180, 177 S. W. 483, Ann. Cas. 1916E, 1281; McSween v. State Live Stock Sanitary Board, 97 Fla. 750, 122 So. 239, 65 A. L. R. 508.

Judicial knowledge is taken of all matters generally known. Muller v. Oregon, 208 U. S. 412, 28 S. Ct. 324, 52 L. Ed. 551, 13 Ann. Cas. 957. And the court is bound to take notice of public facts and geographical positions, and also populations of cities and counties, public documents, reports of Commissions made to Congress, and proceedings thereon, etc. The Appollon, 22 U. S. (9 Wheat.) 362, 6 L. Ed. 111. And of public activities within the common experience of men within the jurisdiction, and more especially of public conferences and meetings of members of a community of common interest and wide concern of which the court ought to have known. Brown v. Spilman, 155 U. S. 665, 670, 15 S. Ct. 245, 39 L. Ed. 304. And if the judge's memory is at fault he may resort to means he may deem safe to refresh his memory. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200.

In Arizona v. California, 283 U. S. 423, 51 S. Ct. 522, 525, 75 L. Ed. 1154, in considering the Boulder Canyon Project Act, the court said: "But a court may take judicial notice that a river within its jurisdiction is navigable. * * * We know judicially, from the evidence of history, that a large part of the Colorado river south of Black Canyon was formerly navigable, and that the main obstacles to navigation have been the accumulations of silt coming from the upper reaches of the river system, and the irregularity in the flow due to periods of low water. * * * We know from the reports of the committees of the Congress which recommended the Boulder Canyon project that, in the opinion of the government engineers, the silt will be arrested by the dam; that, through use of the stored water, irregularity in its flow below Black Canyon can be largely overcome. * * *"

And the Supreme Court considered documents named in the opinion.

In view of the issue and allegations of the complaint, we refer to Document 142, 67th Congress, 2d Session, Report of Secretary of the Interior, pursuant to Act of Congress, approved May 18, 1920 (41 Stat. 600), which the trial court no doubt considered. This report says that the total irrigable land under the All American Canal in California, outside of appellee district, is 270,400 acres. The same report states that the water duty in Palo Verde Valley is 3 acre feet per acre, and that the total acreage which can ultimately be irrigated in Palo Verde Valley is 78,000 acres; that there will be some usable "return flow" in the Imperial Valley, and that the gross requirement for irrigation purposes by gravity in Imperial Valley is 4.4 acre feet per acre, and 3.5 acre feet per acre for lands served by pumps, and that 59,000 acres under the All American Canal will be served by pumps; also, that the 515,000 acres irrigable within the district with a water duty of 4.4 acre feet require 2,266,000 acre feet diversion duty; the 78,000 acres in Palo Verde Valley at 3 acre feet require 234,000 acre feet per annum, and the 25,000 acre feet in the Yuma Project, gross, will need 75,000, making a total in these two projects of 309,-000 acre feet, which, deducted from 3,850,000, leaves 3,541,000 acre feet. These figures, it is assumed, are not disputed. Land occupied by public roads and buildings, or "return flow," and lands not farmed are excluded. From this it follows that there is or will be sufficient water, with 1,275,000 acre feet over.

In order to carry out the provisions of the Boulder Canyon Project Act, on November 5, 1930, the Secretary of the Interior requested the Division of Water Resources of the State of California to make a recommendation of the proper apportionments of the waters of the Colorado river for use in California. The Colorado River Compact was approved by the Boulder Canyon Project Act, and particularly by section 13 thereof (43 USCA § 617l), setting forth the reasons therefor. This compact apportions the use of the waters of the Colorado river between the states of the upper basin, Colorado, New Mexico, Utah, and Wyoming, and of the lower basin, Arizona, California, and Nevada, and leaves certain water unapportioned. There has been no agreement between the states of the lower basin as to the apportionment of waters between themselves. The Congress, therefore, in the Boulder Canyon Project Act (section 4 [43 USCA § 617c]), provided that, before the act should become effective, the Colorado River Compact must not only be approved by at least six of the signatory states, but that California should, by act of her Legislature, limit her use of Colorado river water to 4,400,000 acre feet per year of the water apportioned to the lower basin states, and not to exceed one half of the excess surplus waters unapportioned by the compact. This limitation was accepted by California. Stats. 1929, p. 38.

The plaintiffs' instant interest is in the natural flow of the water of the river. The dam is now, the bill of complaint states, under construction. The purpose of the dam is, among others, to overcome the depleted supply of water at periodic "low flow." See Arizona v. California, supra, 283 U. S. 423,

51 S. Ct. 522, 75 L. Ed. 1154. For the last ten years, the complaint says, the water flow has been insufficient. And it is further stated that no charge for water from the reservoir of the Boulder Dam Project is to be made for water furnished to Coachella and Imperial Valleys.

The Boulder Canyon Project Act, § 5 (43 USCA § 617d), provides in part that: "The Secretary of the Interior is hereby authorized, under such general regulations as he may prescribe, to contract for the storage of water in said reservoir and for the delivery, thereof at such points on the river and on said canal as may be agreed upon, for irrigation and domestic uses. * * * Contracts respecting water for irrigation and domestic uses shall be for permanent service. * * * No person shall have or be entitled to have the use for any purpose of the water stored as aforesaid except by contract made as herein stated."

■ The allocation agreement is a necessary step of all parties to secure the benefit of retained or stored water, and it is alleged that the allocation is to comply with the Secretary of the Interior's request and afford a uniform stipulation to be inserted in all water contracts. While the district now has a fixed right to the water, the allocation contract overcomes the "insufficient flow" at stated periods, and the act affords the use of the All American Dam. There is consideration for the agreement to the district from the benefits accruing by thus overcoming deficiencies that are obvious. The district's fixed right to water, however, was not exclusive, and the claims of the other signatories to the contract, as also rights vested in the United States, and contingencies raised by the Boulder Dam Project Act and rules of the Department of Interior, obviously brought into operation the principle of compromise. 12 Corpus Juris, 339. The mutual promise of the one became consideration for the promise of the others, and each has power to fulfill the several stipulations. May v. LeClaire, 78 U. S. (11 Wall.) 217, 20 L. Ed. 50; Storm v. United States, 94 U. S. 76, 24 L. Ed. 42. The water to the center of the river bordering the state is the property of the state of California to the extent of the limitation, 4,400,000 acre feet (1929 Stats. p. 38), subject to appropriation as provided by the laws of the state. California Civil Code, § 1466. And this though the principle of the common law, including the doctrine of riparian rights, was adopted by the state in 1850. 25 Cal. Jur. 1061.

■ The Acts of the Congress of 1866, and subsequent, while recognizing the prior appropriation of water as in contravention of the common-law rule of a continuous nature, have not attempted to recognize as rightful appropriation to that extent. That the common-law doctrine is not applicable to the public lands owned by the United States in arid regions has been adjudicated. The United States is owner of the bed of navigable waters. California, with other states, has adopted the rule that will allow development of its territory consonant with the right of all of its inhabitants. The common-law use in the arid, mountainous states of the west is not the same as in the eastern states. It has been resolved into the doctrine of reasonable, beneficial use. Clark v. Nash, 198 U. S. 361, 370, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171.

The beds and shores of navigable waters are reserved to the states by the Federal Constitution, within the definition of navigable waters. The Daniel Ball, 77 U. S. (10 Wall.) 557, 19 L. Ed. 999; Packer v. Bird, 137 U. S. 661, 11 S. Ct. 210, 34 L. Ed. 819; Leovy v. United States, 177 U. S. 621, 20 S. Ct. 797, 44 L. Ed. 914. The reclamation and cultivation of arid land are indispensable to growth and prosperity, and waters for sanitary and domestic purposes in the centers of population, and for like purposes and agricultural purposes in the rural districts are indispensable to life, health, prosperity, and the public welfare; and these consequences must give heed to legislation for the common good where no substantial injury results. Act July 26, 1866 (14 Stat. 253); Act June 4, 1872 (17 Stat. 217); Act March 3, 1877 (19 Stat. 377); Act March 3, 1891 (26 Stat. 1096); Act Aug. 18, 1894 (28 Stat. 422), § 4; Act June 17, 1902 (32 Stat. 388); Basey v. Gallagher, 87 U. S. (20 Wall.) 670, 22 L. Ed. 452; Fallbrook, etc., v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369; United States v. Rio Grande, etc., 174 U. S. 690, 19 S. Ct. 770, 43 L. Ed. 1136; Clark v. Nash, 198 U. S. 361, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171. The reasonable use of water of a stream to irrigate riparian lands is permitted in California; but what is reasonable and what are riparian rights are not clearly defined. See, Katz v. Walkinshaw, 141 Cal. 116, 70 P. 663, 74 P. 776, 64 L. R. A. 236, 99 Am. St. Rep. 35; Gould v. Eaton, 117 Cal. 539, 49 P. 577, 38 L. R. A. 181.

■ The matter agreed upon in the proposed allocation agreement was clearly a matter of compromise between all of the interested par-

ties within lawful authority, and jurisdiction and power vested in the board to consummate the purpose.

Section 15 of the California Irrigation District Act (Deering's Gen. Laws Supp. 1925–1927, Act 3854) provides, in part:

"The board of directors shall have the power and it shall be their duty to manage and conduct the business and affairs of the district; make and execute all necessary contracts. ＊ ＊ ＊ Said board may enter into, and do any acts necessary or proper for the performance of any agreements with the United States or any state, county, district of any kind, public or private corporation, association, firm or individual, or any number of them, for the joint acquisition, construction, leasing ownership, disposition, use, management, maintenance, repair or operation of any rights, works or other property of a kind which might lawfully be acquired or owned by the irrigation district, and may acquire the right to store water in any reservoirs or to carry water through any canal."

Section 15b (Deering's Gen. Laws, 1923, Act 3854): "The board of directors of any irrigation district may also construct the necessary dams, reservoirs, and works for the collection of water for said district, and do any and every lawful act necessary to be done, that sufficient water may be furnished to each landowner in said district for irrigation and domestic purposes."

Section 15c (Deering's Gen. Laws 1923, Act 3854): "＊ ＊ ＊ Said board shall have power generally to perform all such acts as shall be necessary to fully carry out the purposes of the act."

Act of May 5, 1917, Statutes of California 1917, p. 243.

Then is set out the power to contract with the United States under the Reclamation Law and to do everything necessary to carry out any other acts of the Congress.

There is likewise no allegation that any right of appellants is presently interfered with. Arizona v. California, 283 U. S. 423, 460, 51 S. Ct. 522, 75 L. Ed. 1154.

The instant issue is not one alone affecting an individual citizen or his separate property. The water of the river is a treasure that offers necessity of life to at least several millions of people, and must be apportioned in harmony with the provisions of law, in equality of right and equity (New Jersey v. New York, 283 U. S. 336, 51 S. Ct. 478, 75 L. Ed. 1104), for the common good.

Affirmed.