AMBLER v. WHIPPLE.

A rehearing will not be granted on the ground that the record on which the case was heard was imperfect, it appearing by an examination of the parts which on the original hearing were left out, but which were now brought up, that they presented nothing but matter which did not affect the merits of the case, or matter which only further established that which the court in giving its decree considered to be already otherwise abundantly proved.

THIS was a petition for rehearing, made in behalf of Whipple, the appellee, in an appeal from a chancery decree, in which a judgment of reversal and remand had been given in this court against him, at an earlier part of this term.*

The original case was thus:

Whipple, of the city of Washington, D. C., had formed a partnership in the year 1869, with a man of the name of Ambler, the purpose of the partnership being to generate gas from petroleum by a new process which Ambler professed to have discovered.   Whipple was the man of business of the firm, and the person who furnished the requisite money to carry on the scheme.   Ambler was a man of inventive genius, but of genius disfigured by so many irregularities and vices as to make it somewhat doubtful whether he was entirely sane.   He would get, for example, into drunken debauches, from time to time, and when in them, lie, cheat, commit forgery (of which, indeed, he was at the time actually convict), and go away from Washington as

———

* 20 Wallace, 546.

if he had no business there at all to attend to.  About the 21st of August, 1869, Ambler being sober enough before and at the time, the parties made an experiment which resulted in a valuable and profitable discovery.  Soon after this, that is to say, about the 1st of September following, Ambler having got into one of his drunken fits, went away from Washington, and was gone for eight or ten days while Whipple was bringing more nearly to perfection the experiment just mentioned, the success of which, in the main, had been already established; a success which was largely due to Ambler.

Having got through his debauch, Ambler returned to Washington, where he found that Whipple had taken another person into partnership with him, and that the two had combined to shut him out of the partnership workshops, and to treat him as no longer interested in the business of the firm.

Ambler hereupon filed a bill praying that the new firm might be enjoined from using the recent discovery, and that Whipple might account.

Whipple answered, setting forth Ambler's habits of debauchery, of lying, &c., and that he had abandoned the workshops at Washington—in which point of light the bill represented Ambler's recent departure.

Neither, however, in this answer nor in a cross-bill which he filed, did Whipple allege that Ambler's character and habits were *not known to him* as to very many other persons in Washington before the formation of the partnership. And in point of fact it seemed that they were perfectly well known to him as to others.  No dissolution of the partnership was prayed for by either party.

This court on appeal from a decree made in the local court at Washington where the proceedings in the case were originally begun, decreed that though Ambler's bad character— his drunkenness, dishonesty, &c.—would have been good ground for dissolving the partnership had the partnership been entered into in ignorance of them by Whipple, yet that Whipple having been fully acquainted with them before the

partnership was made, he could not now make them the ex-
cuse to treat the partnership as ended, and to take to himself
all the benefits of the joint labor of the two partners and
their joint property. And it appearing on the proofs, that
notwithstanding all his foibles and vices, Ambler had greatly
contributed by his inventive genius to the discovery which
had been made on the 21st of August, 1869—contributed
indeed quite as much as Whipple ever had by his money
and his more steady habits—this court charged Whipple
with half the profits made since his exclusion of Ambler
from the workshops. .

In narrating the facts of the case, before giving the opin-
ion of the court upon them, the court spoke of Ambler's de-
parture from Washington as having occurred *on the* 20*th of*
*August.** In point of fact, as already said, he actually went
from the city on the 1st of September, he having been lying
about somewhere more or less intoxicated, as was said, for
a day or two before he actually went out of town.

Such was the original case. The petition for rehearing
now set forth that a large part of the matter which was be-
fore the court below had been omitted on the hearing before
this court, and that such hearing was, therefore, upon a
defective record. Affidavits accompanied the petition, by
which it was attempted to be shown that owing to the death
of one of the gentlemen employed as counsel, and the sub-
stitution of others, there was no laches or neglect in exam-
ining and perfecting the record before the hearing, for which
the petitioner, Whipple, the appellee, should be held respon-
sible. A transcript of the parts of the record which were
omitted in the first transcript, now accompanied the peti-
tion for rehearing. They consisted of commissions to take
depositions, of orders fixing the time, by extension or other-

---

* This slight and wholly unimportant inaccuracy of the court was noted
by the Reporter as he was reporting the case, and in making his " statement
of the case," no exact day in August was given; it being made to appear
only that Ambler's departure was probably after the 21st. The error of the
court, therefore, does not appear in the report with any point. In fact, as
is decided in this case, it had none in any aspect.

wise, for taking testimony, of rules upon the parties to do various things preparatory to a final hearing, which did not affect the merits of the case; and of matters showing Ambler to have been drunk, vicious, negligent, and in contempt of court in the progress of the case.

The petition for rehearing stated the petitioner's case very fully, fortifying it, so far as it could be fortified, by references and extracts from both the original record and the supplemental one now brought up, and containing the parts which had been omitted.

As respected one of the points sought to be established by the affidavits—to wit, that Whipple, or his counsel, were without fault in not having sought before the hearing of the original case to perfect the transcript of the record—it appeared by an examination of the records of this court, that the appeal was docketed and dismissed February 19th, 1872, because the record had not been filed within the time limited by the rule of the court; that on the 1st of March, a motion to set aside that order was made, when the late Mr. Hughes, counsel for Whipple, the appellee, obtained time for one week to examine the transcript proposed to be filed, and it was within the recollection of the court, that this was on the ground that it was an incomplete record.

It further appeared by the same sort of evidence, that on the 8th of March, Mr. Hughes had an extension of time for this examination to the 22d, which made three weeks allowed for that purpose, and on that day the order of dismissal was set aside and the case docketed, on the transcript on which it was finally heard. The case was reached for argument at the October Term of 1873, and continued without objection, and on the 15th of October, 1874, was passed until the 13th of November by consent, and heard on the 16th and 17th of that month.

Mr. Justice MILLER delivered the opinion of the court.

It is the well-settled rule of this court, to which it has steadily adhered, that no rehearing is granted unless some member of the court who concurred in the judgment, ex-

presses a desire for it, and not then unless the proposition receives the support of a majority of the court. For this reason, and for the better reason that the pressure of business in the court does not permit it, no reply to the petition whatever is allowed from the other side or given by the court.

The petition for rehearing in this case presents some features which seem to require a departure from this rule. It states that the hearing in this court was had on an imperfect record, that a large part of the matter which was before the court below had been omitted in the transcript certified to this court, and it attempts to show by affidavits that there was no laches or neglect for which the appellee should be held responsible in failing to examine and perfect the record before the hearing.

If this statement be correct, and if the omissions in the transcript on which the case was heard are material to the decision of the case, it presents a strong appeal for reargument; and we have, therefore, given a careful consideration to the very full petition for rehearing, and availed ourselves of its copious references to the original and supplemental transcripts.

But an examination of the proceedings in the case in this court sheds much light on a question suggested in the affidavits. The facts which are of record in this court, show that the sufficiency of the transcript on which the case was heard had been a matter of careful consideration by counsel for the petitioners, and that it was finally accepted and filed, and that for two years and a half it remained on the docket and no attempt to correct it by *certiorari* or otherwise was made. It cannot be said, in the face of these facts, even if the omitted parts of the record were material, that the appellee was without fault in failing to have it brought up.

But we have no doubt that Mr. Hughes, who was an experienced and careful lawyer, was satisfied, as we are, from an examination of this additional transcript, that it was wholly immaterial to any issue in the cause.

It consists of commissions, orders, and rules, which do not

affect the merits of the case.    It is filled with matter showing Ambler to have been drunk, vicious, negligent, and in contempt of the court, in the progress of the case.    In short, if his cause was to be tried on *his merits* instead of the merits of his case, it shows enough, as the original record did, to defeat it.

All this is only in aid of the theory on which Whipple has rested his case and lost it, namely, that because Ambler was a very bad man, a drunkard, and a convicted felon, that he, his trustee and partner, could take to himself all the benefit of Ambler's skill and labor, disregard his double relation as trustee and partner, and violate every principle which governs these confidential relations.

The only error of fact pointed out in the opinion of the court, which is sustained by the record, is that Ambler, instead of leaving Washington about the 20th of August, the date of the successful experiment, did not leave the city until September the 1st, a difference wholly without influence on the points decided.

We remain of the opinion that the decree of this court was right, and the petition for rehearing is

DENIED.