## GAS PRODUCTS CO., APPELLANT, *v.* RANKIN, ATTORNEY GENERAL, ET AL., RESPONDENTS.

### (No. 5,031.)

(Submitted March 15, 1922.  Decided May 18, 1922.)

[207 Pac. 993.]

*Injunction—Natural Gas—Ownership—Statute Limiting Use—*
*Unconstitutionality—Appeal and Error—Rehearings.*

"Land"—Definition.
> 1.  "Land" under the common-law rule which is and has been a part of the jurisprudence of Montana since the organization of the territory includes not only the surface of the earth but everything under it and over it as well.

Common Law—What Constitutes.
> 2.  The common law of England is that body of jurisprudence as applied and modified by the courts of this country up to the time it became a rule of decision in this commonwealth.

Natural Gas—Statute Limiting Use Unconstitutional.
> 3.  *Held*, that Chapter 125, Laws of 1921 (secs. 3550 to 3552, Rev. Codes 1921), prohibiting the use or consumption of natural gas from a natural gas well in such manner as to prevent the heat therein contained from being utilized for other manufacturing purposes or domestic purposes, is unconstitutional as depriving the owner of his property without due process of law.

Same—Waste—State may Prevent.
> 4.  *Obiter:* The state may with propriety prevent the waste of natural resources, such as natural gas, even though the lands on which they are produced are privately owned.

Same—Petroleum—Ownership.
> 5.  Both petroleum and gas as long as they remain in the ground are a part of the realty, and belong to the owner of the land as long as they are on it or in it or subject to his control, but when they escape and go into other land and come into another's control, the title of the former owner is gone, and when produced on the surface they become personal property and belong to the owner of the well.

Statutes—When Unconstitutional.
> 6.  While the constitutionality of a statute is *prima facie* presumed, and every intendment in its favor will be made, yet where its unconstitutionality appears · beyond a reasonable doubt, as where it is

---

3.  Constitutionality of statutes to prevent waste of subterranean water, natural gas or oil, see notes in 4 Ann. Cas. 213, 357; 16 Ann. Cas. 1001; Ann. Cas. 1912C, 165; 23 L. R. A. (n. s.) 436.

Right of state to forbid exploration of natural resources, see note in 35 L. R. A. (n. s.) 1193.

Nature of property in mineral oil or gas, see note in 25 L. R. A. 222.

pernicious, unreasonable, confiscatory in character and violates the constitutional rights of property, the court will not hesitate in declaring it void.

(ASSOCIATE JUSTICES COOPER and HOLLOWAY dissenting.)

Appeal and Error—Rehearings—Change of Personnel of Court.

7. Where judgment on appeal was had by a bare majority of the supreme court and subsequently the personnel of the majority was changed by the appointment of a successor to one of them who had died, thus leaving the court equally divided on the question at issue, the newly appointed justice will not take part in the disposition of a motion for rehearing of the cause.

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

ACTION for injunction by the Gas Products Company against Wellington D. Rankin, Attorney General, and another. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

*Mr. James W. Remick* and *Messrs. Gunn, Rasch & Hall,* for Appellant, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

(After an extended review by counsel of the holdings in the cases of *Walls* v. *Midland Carbon Co.,* 254 U. S. 300, 65 L. Ed. 276, 41 Sup. Ct. Rep. 118, *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 44 L. Ed. 729, 20 Sup. Ct. Rep. 576, and *Lindley* v. *National Carbonic Gas Co.,* 220 U. S. 61, Ann. Cas. 1912C, 160, 55 L. Ed. 369, 31 Sup. Ct. Rep. 337 [see, also, Rose's U. S. Notes], referred to in the opinion:) The owner of land is the owner of everything beneath the surface, including oil and gas. (*Del Monte M. & M. Co.* v. *Last Chance M. & M. Co.,* 171 U. S. 55, 43 L. Ed. 72, 18 Sup. Ct. Rep. 895 [see, also, Rose's U. S. Notes]; *Montana O. P. Co.* v. *Boston & M. C. C. & S. M. Co.,* 27 Mont. 536, 71 Pac. 1005; *Kansas Natural Gas Co.* v. *Haskell,* 172 Fed. 545; *Osborn* v. *Arkansas Territorial Oil & Gas Co.,* 103 Ark. 175, 146 S. W. 122; *Kelley* v. *Ohio Oil Co.,* 57 Ohio St. 328, 63 Am. St. Rep. 721, 39 L. R. A. 765, 49 N. E. 399; *Hynson* v. *Gulf Production Co.* (Tex. Civ.), 232 S. W. 873; *Williamson* v. *Jones,* 39 W. Va. 256, 25 L. R. A. 222, 19 S. E. 436; *Lanyon*

*Zinc Co.* v. *Freeman,* 68 Kan. 691, 1 Ann. Cas. 403, 75 Pac. 995.)

If the surface owner is the owner of the oil or gas beneath the surface of his land, it is beyond the power of the legislative assembly to regulate the use or disposition which may be made of such oil or gas, for the same reason and upon the same ground that the legislature cannot regulate the use or disposition which may be made of any private property. To deprive a person of the right to use or dispose of property is a taking of the property itself. (*Forster* v. *Scott,* 136 N. Y. 577, 18 L. R. A. 543, 32 N. E. 976; *Litchfield* v. *Pond,* 186 N. Y. 66, 80, 78 N. E. 719; *Buchanan* v. *Warley,* 245 U. S. 60, 74, 62 L. Ed. 149, 38 Sup. Ct. Rep. 16.)

The statute cannot be sustained as a conservation measure in the interest of the public. Private property cannot be conserved in the interest of the public. (See *West* v. *Kansas Natural Gas Co.,* 221 U. S. 229, 35 L. R. A. (n. s.) 1193, 55 L. Ed. 716, 31 Sup. Ct. Rep. 564 [see, also, Rose's U. S. Notes] ; *Manufacturers' Gas & Oil Co.* v. *Indiana Natural Gas & Oil Co.,* 155 Ind. 545, 53 L. R. A. 134, 58 N. E. 706; *State* v. *Indiana & Ohio Oil, Gas & Mining Co.,* 120 Ind. 575, 6 L. R. A. 579, 22 N. E. 778; *People* v. *New York Carbonic Acid Gas Co.,* 196 N. Y. 421, 90 N. E. 441.)

We assert that not a case can be found in the law books where a person has been denied the right to make such use of his individual property as he sees fit, where such use is innocuous and in no manner interferes with the rights of others. If such legislation as this is authorized, the use of wood for the manufacture of wood pulp could be prohibited, for the reason that by such use, the heat is entirely wasted, and the use of oil for the manufacture of printer's ink could be prohibited for the same reason. The mere statement of the effect of such legislation should be sufficient to condemn it.

We wish it understood that we do not deny the power of the legislature to regulate and control private property, where

such regulation and control is for the purpose of giving effect to the maxim, *"Sic utere tuo, ut alienum non laedas."*

This maxim was invoked in the case of *Fisher* v. *Clark*, 41 Barb. (N. Y.) 329, and, in discussing the same, the court said: "It is well settled that every man has the absolute right to use his own property as he pleases, for all the purposes to which such property is usually applied, without being answerable for consequences, provided he exercise a proper care and skill to prevent any unnecessary injury to others." (*Ryan* v. *Quinlan*, 45 Mont. 521, 533, 124 Pac. 512; *In re Kelso*, 147 Cal. 609, 109 Am. St. Rep. 178, 2 L. R. A. (n. s.) 796, 82 Pac. 241.)

We submit that without regard to the rule of property relating to oil and gas, which obtains in Montana, this statute conflicts with the guaranties of the Constitution of Montana, and of the Constitution of the United States protecting property, and cannot be justified as a proper exercise of the police power. No one had ever questioned the right to use natural gas for the manufacture of carbon black until the enactment of this statute. The business of appellant was regarded as a legitimate business for more than two years. The state permitted the appellant to qualify as a foreign corpora tion to engage in such business. The appellant was allowed and encouraged to expend a large amount of money in constructing and perfecting its factory. The effect of the statute is to confiscate appellant's property. (*Dobbins* v. *Los Angeles*, 195 U. S. 223, 49 L. Ed. 169, 25 Sup. Ct. Rep. 18 [see, also, Rose's U. S. Notes].)

*Mr. Wellington D. Rankin,* Attorney General, *Mr. A. H. Angstman,* Assistant Attorney General, and *Mr. D. R. Young,* County Attorney of Fallon County, for Respondents, submitted a brief; *Mr. Rankin* argued the cause orally.

It is the contention of respondents that the validity of Chapter 125, Laws of 1921, must be sustained upon the au-

thority of the case of *Walls* v. *Midland Carbon Co.,* 254 U. S. 30, 65 L. Ed. 276, 41 Sup. Ct. Rep. 118.

The decision in the *Walls Case* was not based upon a rule of property relating to oil and gas peculiar to the state of Indiana.

Counsel for appellant contend that the *Walls Case* was decided upon the authority of the case of *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 44 L. Ed. 729, 20 Sup. Ct. Rep. 576 [see, also, Rose's U. S. Notes], and upon the assumption that the rule of property relating to oil and gas as recognized in that case exists in Wyoming. As a matter of fact, the decisions in both cases were based upon the peculiar nature of gas rather than upon any particular rule of property existing in any particular jurisdiction. The court followed its own rule established in the case of *Brown* v. *Spilman,* 155 U. S. 665, 39 L. Ed. 304, 15 Sup. Ct. Rep. 245 [see, also, Rose's U. S. Notes].

Counsel have referred to the case of *Manufacturers' Gas & O. Co.* v. *Indiana Natural Gas & O. Co.,* 155 Ind. 461, 50 L. R. A. 768, 57 N. E. 912, which holds in effect that the owner of land above a reservoir of natural gas may enjoin another land owner from pumping natural gas or from using other means to increase the flow from the common reservoir. Whatever value this case may have in determining the rule of property relating to oil and gas in Indiana, it has no materiality in this case, for it was decided after the case of *Ohio Oil Co.* v. *Indiana* was decided, and, of course, had nothing to do with the decision of the latter case.

The departure from the common-law rule in Indiana with reference to oil and gas was due to the nature of gas as evidenced by the opinion in *State* v. *Ohio Oil Co.,* 150 Ind. 21, 47 L. R. A. 627, 49 N. E. 809. In the case of *People's Gas Co.* v. *Tyner,* 131 Ind. 277, 281, 31 Am. St. Rep. 433, 16 L. R. A. 443, 31 N. E. 59, the court likened natural gas and the laws regulating their taking to wild animals, and this case was quoted and referred to in the case

of *Townsend* v. *State,* 147 Ind. 624, 625, 62 Am. St. Rep. 477, 37 L. R. A. 294, 47 N. E. 19; also referred to and quoted in the case of *State* v. *Ohio Oil Co., supra.*

It is apparent that Indiana adopted, or, at least, brought to her assistance, in dealing with the subject of gas, a rule of the common law, to-wit: the rule with regard to animals *ferae naturae,* and which seems a more reasonable rule to adopt on this subject than the rule providing that the owner of the surface owns all beneath to the very center of the earth and all above to the highest heaven, and that, therefore, oil and gas in the earth belong to the owner of the land, but if they escape and go into the land of another, the title of the former owner is gone and they become the property of the latter. While it is true that we have adopted the common law of England, sections 3552, 6213 and 8060 of the Revised Codes of 1907, yet oil and gas were unknown until long after the period covered by the common law; at least, they were unknown as a subject of property and property rights. While oil springs and floating oil had been observed by earlier explorers and settlers in this country, the first oil well was drilled in the year 1859. (Thornton on Oil and Gas, secs. 2–5.)

The supreme court of the United States, when the case of *State* v. *Ohio Oil Co.* came before them as *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 44 L. Ed. 729, 20 Sup. Ct. Rep. 576 [see, also, Rose's U. S. Notes], commented upon the rule of animals *ferae naturae* and its application to the subject of oil and gas, indicated its limitation and pointed out the rule which the lawmakers should observe in the two cases.

Counsel in their brief have made the following assertion: "We believe we are safe in asserting that in every state where oil and gas have been found, with the exception of Indiana, the surface owner is declared to be the owner of all of the oil and gas beneath the surface of his land.  *  *  *  In Indiana oil and gas are placed in the same category with running water, whereas in all the other states oil and gas are treated and regarded as of the same nature, so far as owner-

ship is concerned, as percolating waters; and, according to the common law, percolating waters belong absolutely to the owner of the land in which they are found.'' What is known as the American rule relative to percolating water is discussed by Wiel on Water Rights in the Western States, volume 2, page 973, and, after reviewing the California cases on the subject, the author lists the cases from other states which have, either by a direct holding or by way of *dictum,* departed from the common-law rule. They are found on pages 1008 and 1009 and include cases from the following states: California, Colorado, Delaware, Idaho, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, New Hampshire, New Jersey, New Mexico, New York, West Virginia and the United States supreme court citing the *Ohio Oil Co.* and *Lindsley Cases.* Those taking the contrary view are Wisconsin, Texas and Washington, and Georgia is listed as having held each way. (See, also, *State ex rel. Metcalf* v. *District Court,* 52 Mont. 46, Ann. Cas. 1918A, 985, L. R. A. 1916F, 132, 155 Pac. 278.) In the case of *Ryan* v. *Quinlan,* 45 Mont. 521, 533, 124 Pac. 512, this court has, in effect, declined to follow the common-law rule as to percolating waters, for it said that the common-law rule is subject to the limitation embodied in the maxim *"Sic utere tuo, ut alienum non laedas."*

On account of the fugitive nature of gas, in order to give effect to this maxim and to protect the reciprocal rights of adjacent owners in the common reservoir, the common-law rule of ownership must, of necessity, be modified.

That a state may pass laws for the purpose of protecting its natural resources is no longer open to doubt. (*Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 14 Ann. Cas. 560, 52 L. Ed. 828, 28 Sup. Ct. Rep. 529; *State* v. *Tennessee Copper Co.,* 206 U. S. 230, 11 Ann. Cas. 488, 51 L. Ed. 1038, 27 Sup. Ct. Rep. 618 [see, also, Rose's U. S. Notes]; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, Ann. Cas. 1912C, 160, 55 L. Ed. 369, 31 Sup. Ct. Rep. 337; *Hathorn* v. *Natural*

*Carbonic Gas Co.,* 194 N. Y. 326, 128 Am. St. Rep. 555, 16 Ann. Cas. 989, 23 L. R. A. (n. s.) 436, 87 N. E. 504–513; *Nowata County Gas Co.* v. *Henry Oil Co.,* 269 Fed. 742.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in injunction, involving solely the question of the constitutionality of Chapter 125 of the Laws of 1921. On defendants' motion, judgment on the pleadings was granted and entered. The appeal is from the judgment.

The purpose of the suit is to enjoin the defendants from enforcing or attempting to enforce the statute, which provides in part as follows:

"Section 1. The use, consumption or burning of natural gas taken or drawn from any natural gas well or wells, or borings from which natural gas is produced for the products where such natural gas is burned, consumed or otherwise wasted without the heat therein contained being fully and actually applied and utilized for other manufacturing purposes or domestic purposes is hereby declared to be a wasteful and extravagant use of natural gas and is hereby declared to be unlawful.

"Sec. 2. No person, firm or corporation having the possession or control of any natural gas well or wells, except as herein provided, or borings from which natural gas is produced, whether as a contractor, owner, lessee, agent or manager, shall use, sell, or otherwise dispose of natural gas, the product of any such well or wells, or borings for the purpose of manufacturing or producing carbon or other resultant products from the burning or consumption of such natural gas, without the heat therein contained being fully and actually applied and utilized for other manufacturing purposes or domestic purposes.

"Sec. 3. Any person, firm or corporation violating any of the provisions of this Act shall be guilty of a misdemeanor and shall be punished by a fine of not less than one hundred dollars ($100.00) or more than one thousand dollars ($1,000.00) for

each offense and each and every day in which any person, firm or corporation shall violate any of the provisions hereof shall constitute a separate offense hereunder and subject the offender to the penalty hereby provided.'' (Secs. 3550–3552, inc., Rev. Codes 1921.)

It appears that the plaintiff is a South Dakota corporation, legally and regularly doing business in Montana; that it owns in fee 250 acres of land in Fallon county, upon which there are gas wells producing gas by natural flow in merchantable quantities; that prior to the enactment of this statute the plaintiff erected, owned, and operated, and now owns and operates, a factory for the manufacture of carbon black from natural gas derived from its wells, which are located one and a quarter miles from the town of Baker; that the factory consists of thirty-two fireproof buildings, together with pack-ing-houses, warehouses, conveying and packing machinery, machine-shops, tanks and other buildings, machinery and equipment, covering several acres of ground, in the construc-tion and erection of which the plaintiff has expended over $200,000. The constitutionality of the Act is attacked as vio-lative of the Fourteenth Amendment to the Constitution of the United States, in that it deprives the plaintiff and others of liberty and property without due process of law, and denies to the plaintiff and others the equal protection of the laws; that it violates the provisions of section 10 of Article I of the Constitution of the United States, in that it impairs the obligation of contracts; and further, that it is contrary to equity and good conscience and to the letter and spirit of the Constitution of the state of Montana.

Were we content to accept the views expressed by the su-preme court of the United States as the rule of property rights in this state, our task in determining the questions presented would be comparatively easy. However, the danger of establishing such a principle in this state is apparent, and although we entertain the very highest regard and respect for the decisions of the supreme court of the United States,

we do not feel constrained to follow blindly its determinations affecting the rights of our citizens, especially in view of our own constitutional guaranties. The Act in question is the same as the statute of Wyoming, considered in the case of *Walls* v. *Midland Carbon Co.*, decided by the supreme court of the United States December 13, 1920 (254 U. S. 300, 65 L. Ed. 276, 41 Sup. Ct. Rep. 118), except that the Wyoming statute (Laws 1919, Chap. 125) applies only to gas wells or sources of supply of natural gas "located within ten miles of any incorporated town or industrial plant." In that case the validity of the Wyoming statute was sustained, Chief Justice White, Mr. Justice Vandevanter and Mr. Justice McReynolds dissenting. The court in the opinion said: "The question in the case is, as we have said, whether the legislation of Wyoming is a valid exercise of the police power of the state, and brings into comparison the limits of the power as against the asserted rights of property—whether the legislation is a legal conservation of the natural resources of the state, or an arbitrary interference with private rights. Contentions of this kind have been before this court in other cases, and their discussions and decisions have materiality here. We mean, not discussions or decisions on the police power in the abstract or generality, but discussions and decisions involving conditions and principles pertinent to the present case.

"It will be observed that the Act under review does not prohibit the use of natural gas absolutely. It prohibits, or, to use its words, declares it to be a 'wasteful and extravagant use of natural gas,' when it is burned or consumed 'without the heat therein contained being fully and actually applied and utilized for other manufacturing purposes or domestic purposes.' But not even that unlimitedly, but only when the 'gas well or source of supply is located within ten miles of any incorporated town or industrial plant.' Such is the prohibition upon the user or consumer. There is a prohibition upon the owner or lessee of wells within the designated distance from a town or industrial plant to sell or dispose of

382     GAS PRODUCTS CO. *v.* RANKIN.     [Mar. T. '22
[63 Mont. 372.]

the gas except under the specified conditions 'for the purpose of manufacturing or producing carbon or other resultant products.' There are two elements, therefore, to be considered: (1) The distance of the wells from an incorporated town or industrial plant; (2) the element of heat utilization for manufacturing or domestic purposes. These elements are the determining ones in the accusations against the law. The first is the basis of the discrimination charged against it; the second is the basis of the charge that the law deprives the companies of their property by the ruin of their business and capital investments, and impairs the obligations of pre-existing contracts."

After reviewing, discussing and applying the case of *Brown* v. *Walker,* 204 U. S. 311, 51 L. Ed. 499, 27 Sup. Ct. Rep. 289, *Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 44 L. Ed. 729, 20 Sup. Ct. Rep. 576, and *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, Ann. Cas. 1912C, 160. 55. L. Ed. 399, 31 Sup. Ct. Rep. 337 [see, also, Rose's U. S. Notes], it was held that the Wyoming statute is a legitimate exercise of the police power, and not constitutionally objectionable under the Constitution of the United States as taking property without due process of law or as an unreasonable or arbitrary discrimination. The Wyoming case is cited, and relied upon, by counsel for the defendants.

The supreme court of the state of Indiana sustained the constitutionality of an Act making it unlawful for any person, firm or corporation operating a natural oil or gas well to permit the flow of gas or oil therefrom to escape into the open air, and directed the issuance of an injunction against the operators for the maintenance of a public nuisance and the commission of waste. (*State* v. *Ohio Oil Co.,* 150 Ind. 21, 47 L. R. A. 627, 49 N. E. 809.) This case was reviewed by the supreme court of the United States on writ of error (*Ohio Oil Co.* v. *Indiana,* 177 U. S. 190, 44 L. Ed. 729, 20 Sup. Ct. Rep. 576), and it was there held that the Act is not in violation of the Constitution of the United States, and that its en-

forcement as to persons whose obedience to its commands were coerced by injunction is not a taking of private property without adequate compensation, and does not amount to a denial of due process of law, contrary to the provisions of the Fourteenth Amendment of the Constitution of the United States, but is rather a regulation by the state of Indiana of a subject which especially comes within its lawful authority. Upon examination of the cases cited and relied upon by the supreme court of the United States in the Wyoming case, it will be found that its decision is based on the holding announced in the Indiana case; the latter being on writ of error from the supreme court of the state of Indiana, and the former on appeal from the federal district court of Wyoming. In the Wyoming case, the supreme court accepted the Indiana rule of property as stated by the supreme court of Indiana (*State* v. *Ohio Oil Co., supra*), followed by the United States supreme court on review (*Ohio Oil Co.* v. *Indiana, supra*), but this does not necessarily require that we shall declare the rule for Montana the same, especially if not in accord with our constitutional and statutory provisions, and views respecting the established rules of property in Montana.

In the Indiana case the supreme court of the United States, noting the lack of harmony existing in the decisions of Indiana on the subject, commented as follows: "Without pausing to weigh the reasoning of the opinions of the Indiana court in order to ascertain whether they, in every respect, harmonize, it is apparent that the cases in question, in accord with the rule of general law, settle the rule of property in the state of Indiana, to be as follows: Although in virtue of his proprietorship the owner of the surface may bore wells for the purpose of extracting natural gas and oil, until these substances are actually reduced by him to possession, he has no title whatever to them as owner. That is, he has the exclusive right on his own land to seek to acquire them, but they do not become his property until the effort has resulted in dominion and control by actual possession. It is also clear

from the Indiana cases cited that, in the absence of regulation by law, every owner of the surface within a gas field may prosecute his efforts and may reduce to possession all or every part, if possible, of the deposits without violating the rights of the other surface owners."

The supreme court of the United States in the Indiana case very properly accepted and followed the rule of property relating to oil and gas declared by the supreme court of Indiana. (*Jackson* v. *Chew,* 12 Wheat. (U. S.) 153, 167, 6 L. Ed. 583.) In the case just cited, the court said: "It is true, that many of the cases in which this court has deemed itself bound to conform to state decisions, have arisen on the construction of statutes; but the same rule has been extended to other cases; and there can be no good reason assigned why it should not be, when it is applying settled rules of real property. This court adopts the state decisions, because they settle the law applicable to the case; and the reasons assigned for this course, apply as well to rules of construction growing out of the common law, as the statute law of the state, when applied to the title of lands. And such a course is indispensable, in order to preserve uniformity; otherwise, the peculiar constitution of the judicial tribunals of the states and of the United States, would be productive of the greatest mischief and confusion."

Under the doctrine established in the Indiana case, it follows as of course that if there is no ownership of an oil or gas well in the earth, but merely a coequal right in all owners of land in which the reservoir of oil or gas exists, to take and appropriate from the common reservoir the oil or gas therein, the taking of one of more than his just proportion is an infringement of the rights of the others. On the other hand, according to the rule in Pennsylvania and other states, the surface owner has the same right to and ownership of the oil or gas within his land as he has to the timber on the surface and the solid minerals below the surface, and cannot be limited in the quantity he may take.

The case of *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, Ann. Cas. 1912C, 160, 55 L. Ed. 369, 31 Sup. Ct. Rep. 337, referred to in the opinion in the *Walls Case,* involved the validity of a statute of New York prohibiting the pumping or otherwise drawing by artificial plant from any well made by boring or drilling into the rock mineral waters holding in solution natural mineral salts and an excess of carbonic gas, producing an unnatural flow of carbonic acid gas for the purpose of extracting, collecting, compressing, liquefying or vending such gas as a commodity otherwise than in connection with the mineral water and other mineral ingredients with which it was associated. The case was decided by the circuit court for the southern district of New York (170 Fed. 1023) upon the authority of *Hathorn* v. *Natural Carbonic Gas Co.,* 194 N. Y. 326, 128 Am. St. Rep. 555, 16 Ann. Cas. 989, 23 L. R. A. (n. s.) 436, 87 N. E. 504. Upon an examination of this last-mentioned case, it will be found that, while the common-law rule of real property was recognized, it was held that this rule limits the surface owner to the water which naturally finds its way into his land, and in the course of its opinion the court said: ''It has been suggested that the Saratoga waters are of a peculiar character and more in the nature of minerals than water, and that, therefore, the use of them by the land owner should be governed by different rules than those which ordinarily apply to the use of subterranean waters. It may be answered to this suggestion that subterranean waters have always been treated as a mineral in the decisions relating to their use and enjoyment, and that no distinction in this case can be predicated upon the peculiar character and quantity of the salts and gases which happen to be in solution. (*Westmoreland etc. N. Gas Co.* v. *De Witt,* 130 Pa. St. 235, 249, 5 L. R. A. 731, 18 Atl. 724; *People's Gas Co.* v. *Tyner,* 131 Ind. 277, 280, 31 Am. St. Rep. 433, 16 L. R. A. 443, 31 N. E. 59.) The case of *Huber* v. *Merkel,* 117 Wis. 355, 98 Am. St. Rep. 933, 62 L. R. A. 589, 94 N. W. 354, has been pressed on our attention by the appellant both

as sustaining its right at common law to draw water and gas as it has been doing and also as denying the right of the legislature to pass the statute next to be considered. In that case the court was construing the constitutionality of a law providing in substance that any owner or operator of an artesian well who permitted it to discharge more water than was reasonably necessary for his use, thereby materially diminishing the flow of water in any other artesian well in the same vicinity, should be liable for damages. In the course of its consideration of this law it was stated, 'so it seems inevitable that, in this state, at least, the right of a land owner to sink wells and gather and use percolating waters as he will * * * is a property right, which cannot be taken away from him or impaired by legislation, unless by way of the exercise of the right of eminent domain, or by the police power,' and it was then held that the statute was not a proper exercise of police power and was unconstitutional. It is to be said of this case as greatly distinguishing it from the present one that it was dealing with the natural flow of percolating waters and not with a flow unnaturally forced by artificial means. If, however, some of the broad statements made in the opinion should be deemed pertinent to such facts as are disclosed here and to sustain the right of a proprietor to use at will subterranean waters under the circumstances disclosed in this case, it must be said, as was intimated in the Wisconsin case itself, that the courts of this state and of that one disagree on this subject.''.

And the fact should not be overlooked that the New York statute, considered in the case of *Lindsley* v. *Natural Carbonic Gas Co.,* was directed against "pumping or otherwise drawing by artificial appliance," while the Montana statute applies to gas which naturally finds its way to the surface through a well.

The basis for the holding in the *Ohio Oil Company Case* is stated in the opinion in *West* v. *Kansas Natural Gas Co.,* 221

U. S. 229, 35 L. R. A. (n. s.) 1193, 55 L. Ed. 716, 31 Sup. Ct.
Rep. 564 [see, also, Rose's U. S. Notes], as follows: ''The
statute of Indiana was directed against waste of the gas, and
was sustained because it protected the use of all the surface
owners against the waste of any. The statute was one of
true conservation, securing the rights of property, not im-
pairing them. Its purpose was to secure to the common
owners of the gas a proportionate acquisition of it, a reduc-
tion to possession and property, not to take away any right
of use or disposition after it had thus become property. It
was sustained because such was its purpose; and we said
that the surface owners of the soil, owners of the gas as well,
could not be deprived of the right to reduce it to possession
without the taking of private property. It surely cannot
need argument to show that if they could not be deprived
of the right to reduce the gas to possession they could not
be deprived of any right which attached to it when in posses-
sion.''

In the case last cited, a statute of Oklahoma (Laws 1907,
c. 67), prohibiting the transportation of natural gas from
the state, was declared unconstitutional upon the ground that
it was an interference with interstate commerce. The court
in the course of its opinion, after referring to and discussing
the *Ohio Oil Company Case,* said: ''The Oklahoma statute
far transcends the Indiana statute. It does what this court
took pains to show that the Indiana statute did not do. It
does not protect the rights of all surface owners against the
abuses of any. It does not alone regulate the right of the
reduction to possession of the gas, but when the right is
exercised, when the gas becomes property, takes from it the
attributes of property, the right to dispose of it; indeed,
selects its market to reserve it for future purchasers and use
within the state, on the ground that the welfare of the state
will thereby be subserved. The results of the contention repel
its acceptance. Gas, when reduced to possession, is a com-
modity; it belongs to the owner of the land, and, when re-

duced to possession, is his individual property subject to sale by him, and may be a subject of intrastate commerce and interstate commerce.''

It is noteworthy that Chief Justice White, who wrote the opinion in the Indiana case, and Mr. Justice Vandevanter, author of the opinion in the *Natural Carbonic Gas Company Case,* both dissented in the Wyoming case. Reasons for the dissent are not assigned, but it is apparent that they did not believe the Wyoming statute constitutional, notwithstanding their views theretofore expressed.

Since the constitutionality of the Act is attacked, both under the federal and state Constitution, we believe it to be our duty, irrespective of the holdings of other courts, to consider and apply the provisions of our own Constitution and general statutes thereto, and declare the rule of property for Montana.

The Constitution and general laws of the state of Montana contain the following provisions declaratory of property rights in this state. Section 3 of Article III of the Constitution declares that: ''All persons are born equally free, and have certain natural, essential, and inalienable rights, among which may be reckoned the right * * * of acquiring, possessing, and protecting property,'' *etc.* Section 14 of the same Article provides: ''Private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner.'' Section 27 of this Article provides: ''No person shall be deprived of life, liberty, or property without due process of law.'' And section 6722, Revised Codes of 1921, provides: ''Real property within this state is governed by the law of the state, except where the title is in the United States.

''The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others.'' (Sec. 6663, Rev. Codes 1921.)

"The owner of land in fee has the right to the surface and to everything permanently situated beneath or above it." (Sec. 6770, Rev. Codes 1921.)

"The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this state, or of the Codes, is the rule of decision in all the courts of this state." (Sec. 5672, Rev. Codes 1921.)

The common-law rule is stated thus by Blackstone: "Land [1] hath also, in its legal signification, an indefinite extent, upwards as well as downwards. *'Cujus est solum, ejus est usque ad coelum,'* is the maxim of the law; upwards, therefore, no man may erect any building, or the like to overhang another's land; and downwards, whatever is in a direct line, between the surface of any land and the center of the earth, belongs to the owner of the surface; as is every day's experience in the mining countries. So that the word 'land' includes not only the surface of the earth but everything under it, or over it." (Blackstone, Bk. 2, p. 18.)

The common law has been a part of our system of juris- [2] prudence from the organization of Montana territory to the present day. (*State ex rel. Ford* v. *Young,* 54 Mont. 401, 403, 170 Pac. 947.) The common law of England means that body of jurisprudence as applied and modified by the courts of this country up to the time it became a rule of decision in this commonwealth. (*Aetna Accident & Liability Co.* v. *Miller,* 54 Mont. 377, 382, L. R. A. 1918C, 954, 170 Pac. 760.)

In Pennsylvania where the common-law rule of real prop- [3] erty is applied to oil and gas, it was held lawful for land owners to use what is termed a gas pump in an oil well on their property to increase the flow of oil, by withdrawing gas from the well by suction, although the use of such power decreased the production of oil and gas in their neighbors' wells. (*Jones* v. *Forest Oil Co.,* 194 Pa. 379, 48 L. R. A. 748, 44 Atl. 1074.)

"A land owner has the absolute right to dig a well beneath the surface of his land, and if, in the exercise of such right, he dries up his neighbor's well by diverting the percolating waters underground which supply it, the inconvenience which such neighbor suffers therefrom is *damnum absque injuria.*" (*Houston & T. C. R. R. Co.* v. *East,* 98 Tex. 146, 107 Am. St. Rep. 620, 4 Ann. Cas. 827, 66 L. R. A. 738, 81 S. W. 279.) And the rule laid down in this case is supported by the weight of authorities. (See note in 4 Ann. Cas. 829.)

In the case of *Montana, O. P. Co.* v. *Boston & Mont. C. C. & S. M. Co.,* 27 Mont. 536, 71 Pac. 1005, this court, in an opinion by Chief Justice Brantly, in discussing the common-law rule relating to land, as the same applies to mining claims, said: "It is true that the defendant was and is in possession of the surface of the Pennsylvania claim. From this act the presumption arose that it had title to and possession of everything beneath the surface. The doctrine, *'Cujus est solum, ejus est ad inferos,'* applies, but not in the same sense as it does to other species of real estate. At common law this presumption was conclusive where there was no reservation in the grant, or where it did not operate by reason of some local custom. Under the mining laws of the United States, however, it is not conclusive, except as against one who cannot show that he enters beneath the surface in pursuit of a vein of which he owns the apex or portion thereof so intercepted by the end lines of his claim that he is entitled to follow it."

In the case of *Ryan* v. *Quinlan,* 45 Mont. 521, 124 Pac. 512, this court quoted with approval from the opinion in the case of *Chatfield* v. *Wilson,* 28 Vt. 49, as follows: " 'The secret, changeable, and uncontrollable character of underground water in its operations is so diverse and uncertain that we cannot well subject it to the regulations of law, nor build upon it a system of rules, as is done in the case of surface streams. Their nature is defined, and their progress over the surface may be seen and known and is uniform. They are not in

the earth and made a part of it, and no secret influences move them; but they assume a distinct character from that of the earth, and become subject to a certain law—the great law of gravitation. There is, then, no difficulty in recognizing a right to the use of water flowing in a stream as private property, and regulating that use by settled principles of law. We think the practical uncertainties which must ever attend subterranean waters is reason enough why it should not be attempted to subject them to certain fixed rules of law, and that it is better to leave them to be enjoyed absolutely by the owner of the land as one of its natural advantages, and in the eye of the law a part of it; and we think we are warranted in this view by well-considered cases.' " Further in the opinion, Mr. Chief Justice Brantly, speaking for this court, said: "The general rule thus stated is subject, however, to the same limitation as the use of the land itself, *viz.,* that embodied in the maxim, *'Sic utere tuo ut alienum non laedas,'* or, as is said in some of the cases, the use must be without malice or negligence. This seems to be in accord with the current of decisions in the United States."

In reviewing the decisions of the courts upon the question of ownership of oil and gas, District Judges Pollock and Campbell, in the federal district court of Oklahoma, in the case of *Kansas Natural Gas Co.* v. *Haskell* (C. C.), 172 Fed. 545, 563, said: "The rule of property right in natural gas and oil in all the states save Indiana is stated by Mr. Justice Shiras in *Brown* v. *Spilman,* 155 U. S. 665, 39 L. Ed. 304, 15 Sup. Ct. Rep. 245, as follows: 'Petroleum gas and oil belong to the owners of the land, and are a part of it, so long as they are on it or in it, or subject to his control; but when they escape and go into other land, or come under another's control, the title of the former owner is gone. If an adjoining owner drills his own land and taps a deposit of oil or gas extending under his neighbor's field, so that it comes into his well, it becomes his property.' (See, also, Snyder on Mines, pp. 954–958, sec. 1170; Thornton on Oil and Gas, pp.

18–20; White on Mines and Mining Remedies, p. 223, sec. 162; *Funk* v. *Haldeman,* 53 Pa. 248; *Stoughton's Appeal,* 88 Pa. 198; *Blakeley* v. *Marshall,* 174 Pa. 429, 34 Atl. 564; *Gill* v. *Weston,* 110 Pa. 317, 1 Atl. 921; *Westmoreland N. Gas Co.* v. *De Witt,* 130 Pa. 249, 5 L. R. A. 731, 18 Atl. 724; *Chartiers Block Coal Co.* v. *Mellom,* 152 Pa. 297, 34 Am. St. Rep. 645, 18 L. R. A. 702, 25 Atl. 597; *Hague* v. *Wheeler,* 157 Pa. 341, 37 Am. St. Rep. 736, 22 L. R. A. 141, 27 Atl. 714; *Murray* v. *Alfred,* 100 Tenn. 100, 66 Am. St. Rep. 740, 39 L. R. A. 249, 43 S. W. 355; *Moore* v. *Griffin,* 72 Kan. 164, 4 L. R. A. (n. s.) 477, 83 Pac. 395; *Isom* v. *Rex Crude Oil Co.,* 147 Cal. 659, 82 Pac. 317; *Ontario Natural Gas Co.* v. *Gossfield,* 18 Ont. App. 666; *Hughes* v. *Pipe Lines,* 119 N. Y. 423, 23 N. E. 1042; *Williamson* v. *Jones,* 39 W. Va. 256, 25 L. R. A. 222, 19 S. E. 436; *South Penn Oil Co.* v. *McIntire,* 44 W. Va. 305, 28 S. E. 922; *Carter* v. *Tyler County Court,* 45 W. Va. 806, 43 L. R. A. 725, 32 S. E. 216; *Williamson* v. *Jones,* 43 W. Va. 562, 64 Am. St. Rep. 891, 38 L. R. A. 694, 27 S. E. 411; *Wilson* v. *Youst,* 43 W. Va. 834, 39 L. R. A. 292, 28 S. E. 781; *Preston* v. *White,* 57 W. Va. 278, 50 S. E. 236; *Kelley* v. *Ohio Oil Co.,* 57 Ohio St. 328, 63 Am. St. Rep. 721, 39 L. R. A. 765, 49 N. E. 399; *Gas Co.* v. *Ullery,* 68 Ohio St. 271, 67 N. E. 494; *Honemaker* v. *Amos,* 73 Ohio St. 170, 112 Am. St. Rep. 708, 4 L. R. A. (n. s.) 980, 76 N. E. 949; *Hail* v. *Reed,* 15 B. Mon. (Ky.) 479; *Brown* v. *Spilman,* 155 U. S. 665, 39 L. Ed. 304, 15 Sup. Ct. Rep. 245.)''

Natural gas found within the territorial limits of this state is not a product which may be conserved and preserved by law as a thing in which the people have a common interest as flowing streams, wild animals, *etc.;* and one who by lawful right reduces it to possession has the absolute right of property therein, with complete authority to use the same for any industrial purpose, and he cannot be deprived of such right by the state without just compensation, for the reason that to us it appears violative of the Fourteenth Amendment to the Constitution of the United States, and is contrary to

the guaranty contained in section 27 of Article III of the Constitution of Montana. (See *Kansas Natural Gas Co.* v. *Haskell, supra.*)

We do not intend hereby to indicate as our opinion that [4] the state government may not with propriety prevent the waste of natural resources, even though the lands on which they are produced are privately owned.

We cannot see how the owner of the surface can be de-[5] prived of the right to reduce gas underlying his land to possession without the taking of private property. (12 R. C. L. 866.) The general rule is that "Both petroleum and gas, as long as they remain in the ground, are a part of the realty. They belong to the owner of the land, and are a part of it as long as they are on it or in it, or subject to his control. When they escape and go into other lands, or come under another's control, the title of the former owner is gone, and when produced on the surface they become personal property and belong to the owner of the well." (18 R. C. L. 1205; *Lanyon Zinc Co.* v. *Freeman,* 68 Kan. 691, 1 Ann. Cas. 403, 75 Pac. 995.)

And, as above indicated, we subscribe to and declare this to be the doctrine applicable in Montana. We can see no distinction between the owner's property rights to minerals in his land and those pertaining to gas taken from the land and reduced to possession.

Were we to sustain the constitutionality of the Act, there would be no limit to which the legislature might go in depriving persons of the use of private property under the guise of the police power. If it may constitutionally prohibit the use of natural gas taken from privately owned property for use in one industrial or manufacturing business, why not in another? If the rule contended for is given sanction, the use of natural gas in blast furnaces, smelters, factories or for cooking, heating or lighting is equally a proper subject for such prohibitory legislation. Under this rule there is no limit to which the legislature may not go. The

owner of coal or minerals in the ground may thus by legislative control have his property rights so limited and restricted that he would be compelled to abandon mining although the owner of the fee in the land. The same rule would be applicable to percolating waters, oil, growing trees and agricultural crops grown upon the land. The land owner would be subject to regulation as to the number, kind and character of trees he might cut on his own land, and the conditions for cutting imposed. In short, all recognized principles of property rights would thus be destroyed. If the legislature may prohibit the burning of natural gas in the manufacture of carbon black because of the loss of heat units, why may it not as reasonably condemn its use for fuel on account of the fact that the carbon black contained therein is wasted? We are living in a free government, with definite guaranties of property rights, not under the rule of an emperor or czar. Such legislation is paternalistic in character and conflicts with the guaranties of the national and state Constitution and is contrary to the theory upon which our government was formed. The paternal theory of government is odious, and we should not treat lightly or disregard the sacred rights of property recognized and guaranteed by the government.

The plaintiff in this case acquired its property in good faith and in reliance upon its vested property rights, made large investment in a plant and equipment, and the injustice of destroying its property and investment by subsequent legislative enactment is so manifestly unjust and unfair, that the Act should not be upheld.

We are not unmindful of the settled rule in this state that [6] the constitutionality of a legislative enactment is *prima facie* presumed, and every intendment in its favor will be made unless its constitutionality appears beyond a reasonable doubt. (*State ex rel. Bonner* v. *Dixon*, 59 Mont. 58, 195 Pac. 841, and cases there collected.)

However, the Act under consideration is, in our opinion, pernicious, unreasonable and confiscatory in character; it violates the constitutional rights of property of the plaintiff in this state; and therefore we have no hesitancy in declaring it unconstitutional.

For the reasons stated, the cause is reversed and remanded to the district court, with directions to enter a permanent injunction, restraining the defendants and all other persons pretending to act under or by virtue of the authority of such statute from in any manner enforcing or attempting to enforce the same.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. JUSTICE REYNOLDS, disqualified, concur.

ASSOCIATE JUSTICES COOPER and HOLLOWAY dissent.


OPINION ON MOTION FOR REHEARING.

PER CURIAM.

For the reason that the motion for a rehearing does not [7] present any proposition or question which was not fully considered by the court in rendering its decision, and not anything is thereby presented to change the opinion of any member of this court who participated in the original decision upon the question decided, the motion for rehearing is denied. Mr. Justice Farr takes no part in deciding the petition for rehearing.

The petition for rehearing is presented to the court under such circumstances and conditions as to present clearly to the court, in view of the fact that the original decision was by a bare majority of the membership of the court as it was then constituted, the propriety in this particular instance of Mr. Justice Farr participating in the consideration of the peti-

tion for a rehearing. In view of the importance of the question of practice involved, it is deemed proper by the court that its views in relation thereto be given.

At the time of the argument and submission of this cause the court consisted of Mr. Chief Justice Brantly and Associate Justices Reynolds, Cooper, Galen and Holloway. The argument was heard by the full bench, but on account of the subsequent illness of Mr. Justice Reynolds he took no part in the consideration of the case. Thereafter, by reason of the disqualification of Justice Reynolds, Judge Roy E Ayers, one of the judges of the tenth judicial district, who had been serving on the Supreme Court Commission, was taken from the commission and called into this case pursuant to the authority of section 5 of Article VIII of the Constitution of the state of Montana. It has been suggested by the Attorney General that Judge Ayers was called into the case because of a deadlock. While it is true that there was a deadlock—the membership of the court, as it was then constituted, with Justice Reynolds being absent, being equally divided—the authority for calling in Judge Ayers to sit in and take part in the decision of the case was not because of the deadlock, but because of the disqualification of Justice Reynolds due to his illness. The decision of the court was rendered on May 18, 1922, the opinion of the court being written by Mr. Justice Galen, and it was concurred in by Mr. Chief Justice Brantly and by Judge Ayers, sitting in place of Mr. Justice Reynolds, disqualified, Justices Cooper and Holloway dissenting. Justice Reynolds died on May 19, 1922, and Mr. Justice Farr was appointed to this court to fill the vacancy thus caused. In the meantime, Mr. Chief Justice Brantly became disqualified on account of illness, and at the time of the filing of the petition for rehearing, and now, Judge Ayers is sitting in his place in the causes submitted to the court. The petition for rehearing was filed on June 2, 1922.

The Attorney General argues that the petition for rehearing is not made because of the change in the personnel of

the court; at the same time it is suggested that the court as it is now constituted should pass thereon. Mr. Justice Farr has not given any consideration to this case on its merits, and expresses no views thereon. For him to now participate in the consideration of the petition for rehearing would require that he consider the case on its merits, and, if after so considering the case he should be compelled to disagree with the conclusion reached by Mr. Justice Galen and concur with the dissent of Justices Cooper and Holloway, the ultimate effect would be to reverse the decision made just shortly before he became a member of this court. The real effect of such a conclusion, in the opinion of all the Justices, would be to establish a precedent that might have mischievous and unfortunate results. There is not the slightest reason to suppose that the opinion of any one of the members of this court who participated in the original decision would be changed if a rehearing should be granted and a reargument were allowed. And if the original decision of this court should be reversed, in the language of the supreme court of Minnesota, in the case of *Woodbury* v. *Dorman,* 15 Minn. 341 (Gil. 274) : "This result would follow, not from a conviction upon the part of the members of the court by which the case was originally heard and determined, that the decision was erroneous, nor from the consideration of reasons and arguments not before advanced and considered, but solely from the change in the composition of the court." Every citizen is desirous of having our laws definitely established, and the decision of the majority of this court upon any legal proposition coming before it is the law of the state, and should not be subject to change upon the change of the personnel of the court. Rights of persons and of property would never be secure if such were the case. The matter has been given thoughtful and earnest consideration by every member of this court, and it is the opinion of the court that in the orderly and proper administration of justice and interpretation of the law, the motion for rehearing should, under the

circumstances and conditions of this particular case, be acted upon only by the members of the court participating in the original decision.

The petition for rehearing has been regularly and carefully considered, and the petitioner is not denied any right by reason of Mr. Justice Farr taking no part in its consideration; nor is any new rule being announced by the court. The matter has been considered upon the conditions as they existed with relation to this particular case. The principles underlying the proposition involved and controlling the court's conclusion have been long and well established by courts of other jurisdictions, and, while the cases cited are not entirely similar to the conditions presented in this case, the fundamental principles governing the attitude of the courts towards rehearings and rearguments are the same. The supreme court of the United States, in the early case of *Brown* v. *Aspden,* 14 How. (U. S.) 25, 14 L. Ed. 311, in an opinion by Chief Justice Taney, concurred in by the entire court, announced the rule for that court as follows:

"But the rule of the court is this: That no reargument will be heard in any case after judgment is entered unless some member of the court who concurred in the judgment afterwards doubts the correctness of his opinion, and desires a further argument on the subject." (*Ambler* v. *Whipple,* 23 Wall, 278, 23 L. Ed. 127; *United States* v. *Morehead,* 1 Black, 488, 17 L. Ed. 80; *Public Schools* v. *Walker,* 9 Wall. 603, 19 L. Ed. 650; *Carmichael* v. *Eberle,* 177 U. S. 63, 44 L. Ed. 672, 20 Sup. Ct. Rep. 571; *People* v. *Mayor,* 25 Wend. (N. Y.) 254, 35 Am. Dec. 669; *McCutcheon* v. *Homer,* 43 Mich. 483, 38 Am. Rep. 212, 5 N. W. 668; *People* v. *Evening News Assn.,* 51 Mich. 11, 16 N. W. 185, 691.)

While Mr. Justice Farr takes no part in deciding the petition for rehearing, he agrees with the views herein expressed as to the reasons for his not participating.

Rehearing denied July 3, 1922.